UNITED STATES, Appellee,

v.

Douglas E. BREESE, Senior Airman, U. S. Air Force, Appellant.

Dkt. No. 38,351.
ACM 22524.

U. S. Court of Military Appeals.

April 27, 1981.

For Appellant: *Major Wade B. Morrison* (argued); *Colonel Larry G. Stephens* (on brief).

For Appellee: *Major Robert T. Mounts* (argued); *Colonel James P. Porter* (on brief).

### Opinion of the Court

EVERETT, Chief Judge:

These two issues were granted review (9 M.J. 18) on this appeal:

#### I

Whether the military judge erred by failing to apprise the appellant, one of two co-accuseds represented by the same counsel, of his right to conflict-free counsel.

#### II

Whether the military judge erred by allowing trial counsel to argue, over defense objection, that the jury should draw adverse inferences from the appellant's failure to testify under oath during sentencing.

We now have determined that both claims are without merit, and we affirm.

#### I

The pertinent facts concerning the first issue—the conflict of interest claim—are not in dispute. At approximately 3:00 a. m. on a Christmas Eve morning during a security check of buildings on Kadena Air Base, a security policeman heard the noise of a drill emanating from the bank. Upon further surveillance, he detected that someone was inside the bank and called out for him to halt. The person ran. However, a backup security police unit had been summoned and had surrounded the bank building. Thereupon, Breese and Dunavent—attired in their white longjohns, leather gloves, tennis shoes, and knee pads—were caught on the roof of the bank building attempting to flee.

Afterwards, the security police entered the bank and found various burglary tools, including an electric drill and torch. They also noticed that a hole had been drilled into the bank's vault and that a big hole had been cut into one of the bank's walls. Subsequently Breese and Dunavent, who had been identified as Senior Airmen, were charged with housebreaking, attempted larceny of currencies of a value in excess of $100.00, and willful damage of government property, the extent of damage being in excess of $100.00, in violation of Articles 130, 80 and 108, Uniform Code of Military Justice, 10 U.S.C. §§ 930, 880, and 908, respectively.

During their court-martial, the appellant and Dunavent were jointly represented by the same detailed defense attorneys—Captains Glaser and Becker—who were area defense counsel at Kadena. Even though the former appears to have been lead counsel for the appellant and the latter, lead counsel for Dunavent, it is clear that both lawyers were responsible for representing and did represent both of the accused.[1] At their joint Article 39(a), 10 U.S.C.A. § 839(a) session, where the co-accused pleaded guilty to all three charges, they did so under the guidance of these attorneys.[2] The two airmen were represented further by Captains Glaser and Becker at their separate sentencing hearings, which were held a day apart before the same military judge but with different court members. At no time during any of these proceedings was a single objection raised to multiple representation.

However, relying on *United States v. Davis*, 3 M.J. 430 (C.M.A.1977), the appellant contends here that the military judge had an affirmative duty to ascertain on the record the propriety of dual representation

---

1. At the beginning of the joint Article 39(a) session, the military judge noted that Captain Glaser was the detailed defense counsel and that Captain Becker was the detailed assistant defense counsel. However, Captain Glaser conducted the examination of witnesses and made the closing sentencing argument at Breese's trial and Captain Becker assumed the same responsibilities for Dunavent. In this context each is referred to as lead counsel for a particular accused, even though it is clear that they jointly represented both of the accused.

2. Their guilty pleas were not negotiated.

in his case.[3] He claims that the mere representation of multiple defendants by the same attorneys "raises an appearance of conflict"; and he observes that his Sixth Amendment right to adequate legal assistance requires that his counsel be conflict-free and able to render him independent judgment and loyalty. *See Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); ABA Standards, The Defense Function §§ 1.6 and 3.5; ABA Code of Professional Responsibility, EC 7–9 and 7–17, and DR 7–101(A). Moreover, he asserts[4] that a

> waiver of this [constitutional] right can only be predicated upon an advisement by the military judge as to the dangers inherent in representation of multiple accuseds by the same attorney or attorneys and the risk of divided loyalty, so that an accused can make an informed judgment.

Since the military judge made no inquiry on the record concerning possible conflicts of interest in his case, the appellant submits that "[t]he appropriate remedy for failing to take steps necessary to ensure compliance with Sixth Amendment rights is reversal."[5]

It has long been settled, however, that merely because two or more defendants are represented by the same attorney or attorneys "is not *per se* violative of constitutional guarantees of effective assistance of counsel," *Holloway v. Arkansas, supra* at 482, 98 S.Ct. at 1178, and does not automatically raise an appearance of conflict of interest. Indeed, frequently it may even be advantageous for the co-accused to be represented by the same counsel. A united front will avoid the disclosure of information that could otherwise be harmful either as to findings or sentence.[6] When each accused seeks to make the other seem the "real villain," the ultimate effect may be to obtain a heavier sentence for everyone, rather than to reduce the sentence of the group. As Mr. Justice Frankfurter recognized long ago: "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack." *Glasser v. United States,* 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (dissent). Indeed, "[w]e all hang together, or we all hang separately" could be—in the proper case—successful and pragmatic strategy on the part of co-accused. Therefore, it is clear that duality of representation alone is not necessarily violative of the Sixth Amendment.

We granted review of this issue before the recent Supreme Court decision in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), which ruled "that the Sixth Amendment imposed upon the trial court no affirmative duty to inquire into the propriety of multiple representation," *id.* at 348, 100 S.Ct. at 1718, "[u]nless the trial court knows or reasonably should know that a particular conflict exists."[7]

---

3. This claim was rejected by the Air Force Court of Military Review in its unpublished opinion dated October 10, 1979.

4. Appellant's brief, p. 3.

5. *Id.* at 6.

6. Of course, even in these cases where certain advantages might accrue from multiple representation, we do not imply that co-defendants are entitled to joint representation as a matter of law. In the event the court perceives that there is a conflict between the co-defendants, it may appropriately order severance of counsel. *United States v. Bernstein,* 533 F.2d 775, 787–89 (2nd Cir. 1976), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976).

7. Previously it had often been urged that, if counsel had been retained, there was no need for the court to scrutinize the possibility of conflict of interests arising out of multiple representation, since the defendants placed themselves in that predicament. However, *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), expressly rejected any distinction between the retained counsel who were involved there, and assigned counsel:

> A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teachers that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed

*Id.* at 347, 100 S.Ct. at 1717 (footnote omitted). Further, *Cuyler v. Sullivan, supra* at 348, 100 S.Ct. at 1718 (footnote omitted), makes it equally clear that

> [i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.

It cannot be presumed any longer that the possibility for conflict has resulted in inadequate assistance of counsel since such a presumption "is insufficient to impugn a criminal conviction." *Id.* at 350, 100 S.Ct. at 1719.

■ Therefore, in light of *Cuyler v. Sullivan, supra*, the Sixth Amendment would have required in the case at bar that the military judge inquire about the possibility of conflict of interests only if he knew or should have known "that a particular conflict exist[ed]." Additionally, unless the appellant can demonstrate here that Captains Glaser and Becker "actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."[8] *Id.*

■ As in *Cuyler v. Sullivan, supra*, there is nothing in the circumstances of the case

at bar which put or should have put the military judge on notice that the multiple representation posed problems of conflicting interests. As we have already indicated, at no time during the court-martial proceedings did the appellant, Dunavent, or any of the defense attorneys object to the arrangement or even hint that there could be potential conflicts of interest. *Cf. Holloway v. Arkansas, supra*. In *Holloway*, the Supreme Court observed that "[a]n 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'"[9] Indeed, upon discovering a conflict of interest, "[d]efense counsel have an ethical obligation . . . to advise the court promptly when a conflict of interest arises during the course of trial" and to interpose timely objections to the conflict. *Cuyler v. Sullivan, supra*, 446 U.S. at 346, 100 S.Ct. at 1717 (footnote omitted); ABA Code of Professional Responsibility, DR 5–105, EC 5–15; ABA Standards, The Defense Function § 3.5(b) (1971). In the absence of any objection here by any of the participants, especially by the duty-bound defense attorneys, nothing else occurred in either Breese's or Dunavent's trials from which the military judge should have suspected

---

decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.

*Id.* at 344-45, 100 S.Ct. at 1716 (footnotes omitted). Thus, the *Sullivan* rules apply both to cases where counsel have been appointed and those where counsel have been retained.

8. We recognize that subsection (c), which has been added to Fed.R.Crim. P. 44, provides:

> Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, includ-

ing separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Of course, this Rule is not binding on this Court. Furthermore, it only went into effect on December 1, 1980, *see* Pub.L. 96 42, 96th Cong., 1st Sess. (1979), long after the appellant's court-martial. *See also* ABA Standards, The Function of the Trial Judge § 3.4(b) (1972):

> Whenever two or more defendants who have been jointly charged, or whose cases have been consolidated, are represented by the same attorney, the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of his counsel.

9. *Holloway v. Arkansas*, 435 U.S. 475, 485, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426 (1978), quoting from *State v. Davis*, 110 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973).

"that a particular conflict exist[ed]" between the co-accused.

Both Breese and Dunavent pleaded guilty to all charges. By fully confessing their guilt, they effectively avoided—insofar as findings were concerned—the problem of competing interests between themselves. During their respective providency hearings on the pleas of guilty, Breese and Dunavent each confessed to a joint criminal involvement.[10] Since all the evidence made clear that the two airmen had been apprehended *in flagrante delicto*, there was no apparent reason for the military judge to suspect that there might have been any divergence of interest between the two accused with respect to guilt or innocence.

Since they were being sentenced separately by different panels of court members, Breese and Dunavent were not in a situation where one might indirectly have injured the other's cause by pleading for leniency in sentence on the ground that the other accused had instigated the crimes. Indeed, the two Senior Airmen unequivocally admitted that they both had planned and committed the crimes with the intention of splitting the proceeds. They even explained their involvement in terms of "we"; and neither of them ever remotely attempted to shift responsibility or assign any greater degree of culpability to the other. For example, in the appellant's unsworn statement he said, "I know I did wrong" and that he was "willing to face" his punishment. During Dunavent's unsworn statement, he was asked why he became involved with the appellant in the criminal episode and he stated:

The reasons are not really clear. I would say greed, of course. And it was a chal-

lenge. We called it the ultimate challenge. It was stupid.

He was then asked—"Did you think quite often why you were doing it?"—and he replied:

No, we didn't. We only thought—engrossed ourselves with how to do it, how we would go about doing it. We didn't weigh the consequences.

Likewise, nothing said in the arguments of counsel or by any witness who testified in extenuation and mitigation for the appellant or Dunavent disparaged the other co-accused. Indeed, the matters adduced during the trial proceedings on behalf of and against the two co-accused were so identical that the staff judge advocate in his review advised the convening authority to reduce the appellant's sentence so he could get the same sentence that Dunavent received.[11] The reviewer opined:

Senior Airman Breese and Senior Airman Dunavent were co-actors. Apparently, they planned and executed these offenses as equal partners. There is no evidence of record which would indicate one or the other was the instigator. Their involvement is in all ways equal.

Thus, on these facts the Sixth Amendment did not require that the military judge initiate at any point an inquiry into the propriety of proceeding with the same defense attorneys for Breese and Dunavent.

As indicated by the preceding discussion, we cannot find evidence of any actual conflict of interest between the co-accused which impaired the appellant's defense.[12] Even the circumstance that one of the two appointed defense counsel could readily

---

10. At the time we granted review in this case, Dunavent had not filed a petition for grant of review with the Court. Therefore, we granted the government's motion for leave to file pertinent portions of his trial record as an appendix to its brief. Subsequently, Dunavent petitioned the Court and we granted review of the same issue assigned in his case. *United States v. Dunavent*, 9 M.J. 59 (1980). We now have both the *Breese* and *Dunavent* trial records before us, which we have carefully examined in resolving the conflict claim.

11. Dunavent had been sentenced by his jury to a dishonorable discharge, confinement at hard labor for 2 years, forfeiture of $279.00 per month for 24 months, and reduction. However, the appellant had been sentenced to dishonorable discharge, confinement at hard labor for 3 years and 6 months, total forfeitures and reduction.

12. *See* examples cited in *Cuyler v. Sullivan, supra,* and *Holloway v. Arkansas, supra,* 435 U.S. at 490, 98 S.Ct. at 1181.

have been assigned to Breese and the other to Dunavent does not create a constitutional imperative that this be done. *See United States v. Blakey*, 1 M.J. 247 (C.M.A.1976). Until some circumstance indicated the contrary, the military judge could permissibly assume that both airmen were represented by the same lawyers because the accused and their counsel had decided that "[a] common defense ... gives strength against a common attack." *Glasser v. United States*, 315 U.S. at 92, 62 S.Ct. at 475.

In *United States v. Davis, supra*, 3 M.J. at 432, where the military judge had made only a "perfunctory inquiry" into a possible conflict of interest, we reversed the conviction, commenting:

> We are obliged to find that a conflict did, in fact, exist as the accused's counsel represented both the key government witness who testified against the accused pursuant to a grant of immunity and the accused. Representation of two such clearly antagonistic interests [i]n the same case can not be regarded by us as a conflict-free situation.

*Id.* 3 M.J. at 431 n. 3. Under those facts we concluded that

> it ultimately must be the responsibility of the trial court *upon the appearance of a conflict* to bring the fact of its existence and the resulting dangers which are reasonably foreseeable to the attention of each affected defendant so that he can make an informed judgment at the time as to whether he wishes to continue with his present counsel or wishes new counsel. *United States v. Alberti*, 470 F.2d 878 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973); *Morgan v. United States*, 396 F.2d 110 (2d Cir. 1968).

*Id.* 3 M.J. at 434 (emphasis added). However, in the case at hand, there was not even an "appearance of conflict"; and so *Davis* does not require a reversal of the appellant's conviction.

In *Davis*, we recommended that military judges employ a procedure like that utilized in *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), whereby in instances of multiple representation

> the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

3 M.J. at 434. While we do not relish encumbering records of trial with additional recitals, we cannot ignore the Supreme Court's comments that, "Several Courts of Appeals already invoke their supervisory power to require similar inquiries," and that, "[a]s our promulgation of Rule 44(c) suggests, we view such an exercise of the supervisory power as a desirable practice." *Cuyler v. Sullivan, supra*, 446 U.S. at 346 n. 10, 100 S.Ct. at 1717 n. 10. *See* ABA Standards, The Function of the Trial Judge § 3.4(b) (1972).[13]

The Supreme Court has also observed that "a possible conflict inheres in almost every instance of multiple representation," 446 U.S. at 348, 100 S.Ct. at 1718. Presumably it is for this reason that:

> [s]eventy percent of the public defender offices responding to a recent survey reported a strong policy against undertaking multiple representation in criminal cases. Forty-nine percent of the offices responding never undertake such representation.

*Id.* at 346 n. 11, 100 S.Ct. at 1717 n. 11. Rather than be plagued by the problem of alleged conflict of interest midway in a trial or during an appeal, it is far wiser to follow the path of Fed.R.Crim.P. 44(c) and inquire

---

13. Of course the military judge has this obligation only where he in some way is on notice that multiple representation has occurred. Counsel who are aware of multiple representation that would not be apparent to the judge—

e. g., when a defense counsel who represents an accused had advised a coaccused during the pretrial investigation—should bring this to the judge's attention before the trial is underway.

at the beginning of the trial—typically during an Article 39(a) session—into any conflict of interest perils.[14] Accordingly, from the date of this decision, we shall presume—albeit subject to rebuttal—that the activity of defense counsel exhibits a conflict of interest in any case of multiple representation wherein the military judge has not conducted a suitable inquiry into a possible conflict. Thus, by following the lead of the Supreme Court and various Courts of Appeals in utilizing our supervisory jurisdiction in this manner, we intend to disarm future contentions that, by reason of multiple representation, an accused has been deprived of the effective assistance of counsel.

Of course, in cases that precede the case at bar—just as we have done here—we shall carefully examine the record to assure that no conflict of interest has occurred.

## II

■ We proceed to the final issue, which arose from the fact that, after the appellant had made an unsworn statement during his sentencing hearing, trial counsel, in his argument on sentence, told the court members:

[a]nd when you weigh the accused's statement, I ask you to consider something different about the accused's statement. Everybody else who sat in that box today took an oath to tell the truth.

Defense counsel objected to this line of argument, but the military judge overruled the objection. However, during his sentencing instructions, the judge fully instructed the court members on the nature of an unsworn statement. He admonished:

All right, the court will not draw any adverse inference toward the accused from the fact that he did not elect to testify under oath as a witness. The court is advised that an unsworn statement is an authorized means for the accused to bring information to the attention of the court; and although it is not evidence in a formal legal sense, it must

be given appropriate consideration. The accused cannot be cross-examined by the prosecution or questioned by court members or the judge on an unsworn statement.

The prosecution may offer evidence to rebut any statements of fact contained in an unsworn statement, but it may not offer evidence concerning the accused's truthfulness unless the accused offers evidence concerning his truthfulness or comments upon it in an unsworn statement. The weight and significance to be attached to an unsworn statement rests within the sound discretion of each court member. You may consider that the statement is not under oath, its inherent probability or improbability, whether it is supported or contradicted by evidence in the case, as well as any other matter that may have a bearing upon its credibility, taking into account your own common sense, your knowledge of human nature and of the ways of the world.

Notwithstanding the above instructions, the appellant maintains that he was prejudiced by trial counsel's quoted statement, which implied that he was lying since his statement had not been given under oath. We disagree. the judge's instructions were clear and provided the court members with *correct and sufficient guidance needed in considering the appellant's unsworn statement. United States v. Welch*, 1 M.J. 1201 (A.F.C.M.R.1976). Absent evidence to the contrary, it must be presumed that court members followed this advice.

In relevant part, paragraph 75c(2) of the Manual for Courts-Martial, United States, 1969 (Revised edition), states that

[t]his unsworn statement is not evidence, and the accused cannot be cross-examined upon it, but the prosecution may rebut statements of fact therein by evidence. The statement may be oral or in writing, or both. It may be made by the accused, by counsel, or by both.

---

14. Of course, prior to the trial, defense counsel, in the performance of their ethical responsibilities, should already pave the way for such an inquiry.

Of course, under this provision an accused is not entitled to a windfall. The truth of the matter is that these statements are *not* made under oath and, thus, the "unsworn statement is not evidence." Merely urging the court members to consider an unsworn statement for what it is falls within the boundary of fair prosecutorial comment. Here the challenged statement seems only to have been directed towards that end and did not constitute an invitation for the court members to draw an adverse inference against the appellant. *Cf. United States v. Lewis*, 7 M.J. 958 (A.F.C.M.R. 1979); *United States v. Jorkasky*, 7 M.J. 552 (A.F.C.M.R.1979); *United States v. Jackson*, 6 M.J. 116 (C.M.A.1979). Of course, upon defense request or if argument by trial counsel is of a questionable nature, the judge should give the court members an instruction like that utilized in the case at bar.

### III

Accordingly, we affirm the decision of the United States Air Force Court of Military Review.

Judge FLETCHER concurs.

COOK, Judge (concurring in part and dissenting in part):

Nothing in the records of trial that have come to this Court since *United States v. Davis*, 3 M.J. 430 (C.M.A.1977), convinces me that single counsel representation of multiple accused is so inherently or empirically "beset with conflict as to constitute a 'problem'" that requires a solution. *Id.* at 435 (Cook, J., dissenting). Certainly, no history of "continual and often repeated claims of error" exists to make "it appropriate and expedient to take corrective action." *United States v. Goode*, 1 M.J. 3, 6 (C.M.A.1975). Accordingly, as I indicated in my dissent in *Davis*, I do not favor the imposition by this Court of an unnecessary burden upon the trial judiciary. I recognize, however, that under Fed.R.Crim.P. 44(c), which became operative in December 1980, the federal civilian trial judge is now obligated to inquire into possible conflicts of interest when one counsel represents two or more defendants. Mindful of this Court's disposition to look to the practice in the federal civilian courts to fill a procedural interstice in military practice, I am not opposed to a court rule to assure that accused represented by one lawyer are aware of the possibility that they may have conflicting interests that might reduce the effectiveness of counsel's representation as to one or another of them. I disagree, however, with the apparent scope of the rule and the remedy prescribed by the majority for the failure of a trial judge to conduct the prescribed inquiry.

In my opinion, the precepts of the majority have two material defects: (1) Although the caution in footnote 13 of the majority opinion implies a limitation, the text of the majority's rule is unnecessarily broader than Fed.R.Crim.P. 44(c); and (2) the remedy the majority prescribe is not suited to the purpose of the inquiry, and, in practical effect, disregards the fact that single counsel representation of multiple accused is not forbidden by the Constitution or the Uniform Code of Military Justice.

As to the stated scope of their rule, the majority direct that inquiry into possible conflicting interests must be made "in any case of multiple representation." 11 M.J. at 23. Unless one regards their footnote 13 as directory, no allowance is made for a case in which no circumstance puts the trial judge on notice that multiple representation exists.

Rule 44(c) of the federal civilian rules requires the judge to inquire as to a possible conflict of interests only when "two or more defendants [are] jointly charged" or "joined for trial." Either of those circumstances is sufficient to alert the judge to the fact of dual representation. An oddity of military practice, however, provides for "multiple representation" by a detailed defense counsel that is not likely to entail representation of conflicting interests, but which would have to be the subject of inquiry under the majority's rule. The oddity of practice, which has no counterpart in civilian courts, is that a defense counsel is

detailed to a court-martial; as a result, as soon as charges are referred to that court-martial for trial, detailed defense counsel becomes responsible for an accused, even though the accused may later select other counsel for trial. *See* para. 46*d*, Manual for Courts-Martial, United States, 1969 (Revised edition). Should each of several persons involved in the commission of a single crime be separately charged as a principal, as the Code[1] and Manual[2] allow, and should the charge against each be separately referred to the same court-martial, but without direction that the accused be tried in common,[3] the trial judge could not know from the charge sheet, or the order of reference of the charges to trial, or the appearance at trial of detailed defense counsel with a single accused, that counsel may, for a time, have acted in a limited way for a co-accused. Confronted with a similar situation, a civilian trial judge would not, under Rule 44(c), be required to conduct an inquiry for possible conflict of interests. I see no reason to impose a greater burden of inquiry upon the military judge when he has no reason to believe persons other than the accused before him are implicated in the commission of the offense and may be represented by the same lawyer. I would, therefore, explicitly limit the occasions for inquiry to the instances specified in Rule 44(c), and leave it to the accused and counsel to raise the matter in other instances.

Turning to the remedy, the United States Supreme Court has recently cautioned "that remedies should be tailored to the *injury suffered* ... and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981) (emphasis added). What injury does an accused suffer when no inquiry is made at the beginning of trial into the mere possibility that his lawyer may improperly represent him because he also represents a co-accused whose needs may possibly conflict with those of the accused? In *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), the Supreme Court held that a single lawyer's representation of two or more accused does not, alone, "imperil ... [their] right to a fair trial" by denying them effective assistance of counsel. Consequently, unless the trial judge is otherwise informed, if neither counsel nor an accused makes timely assertion that the interests of the several accused conflict, the trial judge can properly "assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Id.* at 347, 100 S.Ct. at 1717 (footnote omitted). That assumption may weigh against an accused should he later assert that a conflict of interests existed and that he did not voluntarily accept its risks. *Id.; see Salomon v. LaVallee*, 575 F.2d 1051, 1055 (2d Cir. 1978). It seems to me, therefore, that the purpose of the inquiry is to substitute, as far as possible, fact for assumption. Thus, the majority say, as some federal courts[4] have said in regard to their respective rules which antedated Rule 44(c), that the inquiry will "disarm future contentions that by reason of multiple representation ... [the] accused has been deprived of the effective assistance of counsel." 11 M.J. at 23. In my opinion, the failure to inquire should have no greater effect than to free the accused from the burden of the inferences that flow from the absence of timely assertion of a conflict of interests.

In *Cuyler*, the Supreme Court proscribed a search for prejudice in regard to an accused when the record discloses that his counsel actually represented conflicting interests because "unconstitutional multiple representation is never harmless error." *Id.* 446 U.S. at 349, 100 S.Ct. at 1719. Consequently, the crucial question in a case of this kind is whether a conflict of interests actually existed.

1. Article 77, Uniform Code of Military Justice, 10 U.S.C. § 877.

2. Para. 26*d*, Manual for Courts-Martial, United States, 1969 (Revised edition).

3. Para. 33*l*, Manual, *supra*.

4. *Salomon v. LaVallee*, 575 F.2d 1051, 1055 (2d Cir. 1978); *United States v. Lawriw*, 568 F.2d 98, 100 (8th Cir. 1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978).

The majority posit that the failure of the trial judge to inquire into the matter gives rise to a presumption that a conflict of interests exists. That presumption, in my opinion, is so impossible of rebuttal in most cases as to be unjustified. If the majority intend their rule to mean that a reviewing authority must presume that an actual conflict exists and that this conflict requires reversal of a conviction unless the Government can rebut the presumption, I disagree with it. First, at its worst, the fact of dual representation supports no more than an inference of *possible* conflict. I cannot accept elevation of this bare possibility to the high state of actuality because the trial judge overlooked the inquiry, and was not reminded of it by either trial or defense counsel. *Cf. United States v. Banks,* 7 M.J. 92 (C.M.A.1979). The judge's lapse imposes no hardship upon the accused; and I do not believe the accused should be granted an inordinate benefit as a result of it. Second, the presumption, although ostensibly rebuttable, virtually guarantees reversal. The Court of Appeals in the *Cuyler* case [5] observed, correctly I believe, that "conflicts of interest ordinarily do not appear in the record" of the accused before the appellate court. Substantively, therefore, to rebut the presumption, the Government would have to prove a negative from other sources that may not be known or are not readily available to it, as, for example, in the case of multiple accused from different armed forces who are represented by a single civilian lawyer. *Cf. United States v. Cuffee,* 10 M.J. 381 (C.M.A.1981). I am impelled to conclude that irrespective of whether the trial judge discharges his obligation to inquire, the accused or his counsel must still bear the burden of identifying a conflict of interests to be entitled to relief.

The remedy I would adopt for failure of the trial judge to conduct, at the beginning of trial, the inquiry as to possible conflict of interests is as follows:

(a) If later during the trial, the judge is made aware of a possible conflict of interests, he may not rely upon the assumption that the previous silence of the accused and counsel was indicative of consent to undertake the risks; instead, he must respond to the evidence of the conflict as though there had been "timely objection." 446 U.S. at 345, 100 S.Ct. at 1716.

(b) In those frequent instances when the conflict of interests does not appear in the record of trial, and the matter is, therefore, raised for the first time on review, the reviewing authority cannot invoke an assumption of waiver. Should the fact of conflict be disputed, the reviewing authority should direct a limited rehearing before a trial judge to resolve the conflict.[6] That is the remedy the United States Supreme Court accorded a probationer in regard to a revocation hearing when it perceived in the record "the *possibility* of a conflict of interest" sufficient to prompt the trial judge to inquire further into the matter. *Wood v. Georgia,* 450 U.S. 261, 272, 101 S.Ct. 1097, 1102, 67 L.Ed.2d 220 (1981). The Court said:

> The judgment below is vacated and the case remanded with instructions that it be returned to the State Court for Fulton County. That court should hold a hearing to determine whether the conflict of interest that this record strongly suggests actually existed at the time of the probation revocation or earlier. If the court finds that an actual conflict of interest existed at that time, and that there was no valid waiver of the right to independent counsel, it must hold a new revocation hearing that is untainted by a legal representative serving conflicting interests.

*Id.* at 273, 101 S.Ct. at 1104 (footnote omitted).

In my opinion, these forms of relief assure an accused full review, whether at trial or on appeal, of an assertion by him that he received ineffective assistance of counsel because of a conflict of interests, without

---

5. *United States ex rel. Sullivan v. Cuyler,* 593 F.2d 512, 520 (3d Cir. 1979).

6. *See United States v. Vietor,* 10 M.J. 69, 72 (C.M.A.1980); *United States v. Killebrew,* 9 M.J. 154, 162 (C.M.A.1980).

regard to whether that assertion was, or was not, timely. At the same time, the Government is not burdened with overcoming a presumption of disadvantage to the accused that has no empirical support. *See United States v. Banks, supra.*

I agree with the majority that no conflict of interests appears in this case. I also agree with Part II of the majority opinion, and I join in affirming the decision of the United States Air Force Court of Military Review.