UNITED STATES, Appellee,

v.

Private E-1 Calvin A. RUSSAW, SSN 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, United States Army, Appellant.

SPCM 17400.

U.S. Army Court of Military Review.

11 March 1983.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Robert C. Rhodes, JAGC, and Captain Peter R. Huntsman, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Jessica A. Polley, JAGC, were on the pleadings for appellee.

Before FULTON, COKER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

COKER, Judge;

Appellant was convicted, contrary to his plea, of stealing $41.00 by trick and of possessing 153 grams of marijuana. His adjudged sentence to a bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $367.00 pay per month for four months was approved. He alleges as error that the search warrant, under which the marijuana was found and seized, was defective in failing to specify the appellant as a suspect and that he was prejudiced by a conflict of interest by his trial defense counsel who represented the co-actor Endresen at an earlier courtmartial. We disagree.

In paragraph one of the warrant, a Private (E-2) Endresen was named as the suspect and his residence, room 121 of a barracks, was the designated place to be searched. The reason given to support the search authorization was a signal from a confidential informant inside the room that a drug transaction with Endresen had been completed and that additional marijuana was present in the room. Further, it recited that the appellant, a roommate of Endresen, was expecting a delivery of 100 grams of marijuana. The warrant then named both Endresen *and* the appellant as the likely perpetrators of the offenses. The affidavit attached to the warrant clearly sets out that the appellant was involved in the negotiations for the purchase and was to receive a large portion of Endresen's supply.

An inadequate description in the body of a search warrant may be cured by considering all the information given to the authorizing official. *United States v. Hartsook,* 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965). Based on the search warrant and supporting affidavit, it is clear that the magistrate authorized the search of all of room 121, specifically including that area of the room under the control of the appellant.

Judicial notice has been taken of the record in the case of *United States v. Endresen,* SPCM 17199, pursuant to motion by the appellant. Endresen was tried by special court-martial, on 13 January 1982, for possession of 211 grams of marijuana and sale of 112 grams of marijuana to a confidential informant. The evidence was seized under authority of the search warrant at issue in the present case. He was defended by Captain B. Captain B's response to the staff judge advocate review of the Endresen trial was submitted between 4 and 8 February 1982, and was a waiver of any comment. Appellant was tried on 24 January and 1 February 1982. The appellant also was defended by Captain B, who was still actively representing Endresen in post-trial proceedings. Captain B responded to the staff judge advocate review of the appellant's trial on 24 March 1982, without comments.

Different military judges sat in the two cases. Each judge asked Captain B, "Have you acted in any manner inconsistent with your duties as defense counsel?" In each case he replied, "No sir, I have not." In each case the judge's inquiry under Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), determined that each accused elected to be represented by Captain B. There is no evidence or indication in appellant's record of trial that the military judge knew or could have known that Captain B had represented Endresen at the earlier trial, or had an attorney-client relationship with him at the time of the appellant's trial.

It is well-established that multiple representation of co-accused is not *per se* a conflict of interest. *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Further, there is no affirmative duty on the trial judge to inquire into the propriety of multiple representation unless he knows or reasonably should know that a particular conflict exists. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The United States Supreme Court, in its supervisory capacity, promulgated Fed.R.Crim.P. 44(c) to address this issue. That rule provides:

"Joint representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel."

In *United States v. Breese,* 11 M.J. 17 (CMA 1981), the Court of Military Appeals established a similar rule for courtsmartial, and specifically determined, "it is far wiser to follow the path of Fed.R.Crim.P. 44(c)." *Breese* 11 M.J. at 22. The path of the federal rule is one trod by "two or more defendants jointly charged ... or joined for trial." This was the lead given by the Supreme Court and the one to be followed by courts-martial. *Breese,* 11 M.J. at 23. The Court enunciated the rule as a rebuttable presumption that a conflict of interest does exist in multiple representation unless the military judge has conducted a suitable inquiry into the possible conflict. *Breese,* 11 M.J. at 23. The appellant was neither jointly charged nor tried jointly or in common with Endresen. The misconduct charged to appellant was unrelated to the misconduct of Endresen. The only common factor in the two cases was the single

search warrant that was the authorization to search the room they shared. This is not a case of multiple representation within the meaning of Rule 44(c) or *Breese.*

■ Even if this Court assumes that the *Breese* presumption is more encompassing than Rule 44(c), *see, United States v. Jeancoq,* 10 M.J. 713 (ACMR), *pet. denied,* 11 M.J. 345 (CMA 1981), we find no error under the circumstances of this case. The duty of the trial judge to inquire into a potential conflict is triggered only if the trial judge knows or should know of the conflict. *Breese,* 11 M.J. at 22 n. 13. In this case, the appearance of multiple representation was not known to the military judge. There were no objections, statements, evidence or actions, that could have alerted him to the situation. To the contrary, the response of counsel to the judge's general inquiry was sufficient to establish in the judge's mind, the absence of any potential or particular conflict. There was, under these circumstances, no duty on the military judge to inquire as to possible conflict by the trial defense counsel and the presumptive rule does not apply.

■ With the determination that the *Breese* presumption does not apply to this case, we turn to the questions of whether there was an actual conflict of interest and if so, whether the appellant was harmed or prejudiced thereby. *United States v. Davis,* 3 M.J. 430 (CMA 1977). There is no allegation that appellant was denied the effective assistance of counsel. There is no allegation that Captain B actively represented conflicting interests. Absent any evidence to support the constitutional violation, there is no error. *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718; *Breese,* 11 M.J. at 20; *United States v. Blakey,* 1 M.J. 247 (CMA 1976). Appellate defense counsel alleges only a probable conflict in that the defense theory was that the marijuana belonged to Endresen. From this, appellate counsel concludes that trial defense counsel "may not have developed this theory fully." We find no basis to support this allegation. Finally, in neither case did Captain B submit any matters in post-trial proceedings on clemency or

in response to the staff judge advocate review. To hypothesize on what Captain B could have done in post-trial proceedings is to chase a will-o'-the-wisp. The review of both records fails to reveal any indication of a conflict of interest or prejudice to either accused.

■ This issue could have been resolved at trial if trial defense counsel had paved the way for an appropriate inquiry. *Breese,* 11 M.J. at 23 n. 14. Defense counsel has an ethical obligation to avoid conflicting representations and to advise the military judge when a potential conflict actually arises. *Cuyler,* 446 U.S. at 346, 100 S.Ct. at 1717; American Bar Association Model Code of Professional Responsibility, Canon 5, EC 5–14, DR 5–105. A trial judge is entitled, however, to rely on the good faith and judgment of counsel. *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717–18. Good judgment would dictate that counsel inform the military judge of any possible conflict and thereby trigger an appropriate inquiry and obviate subsequent litigation. The circumstances of this case, with an appearance of possible conflict, clearly should have been brought to the attention of the military judge. *See Department of the Army Pamphlet 27–10,* Ch. 2, para. 3b, 1 October 1982.

The remaining errors alleged by appellant and his appellate counsel are not meritorious.

The findings of guilty and the sentence are affirmed.

Judge NAUGHTON concurs.

FULTON, Senior Judge, concurring:

I concur in our disposition of this case, but write separately to point out some ethical matters that may otherwise escape attention.

Because of the role of the convening authority, lawyers involved in military cases have a potential conflict of interest that has no counterpart in civilian cases. This case affords a possible illustration. A trial defense counsel who had represented the co-actor Endresen and was representing Rus-

saw before a different court, possibly could take the position that there was reasonable doubt as to Russaw's guilt because Endresen owned the drugs, or that Russaw at least ought to receive a lighter sentence than otherwise (provided these arguments would not violate a confidence received from Endresen). However, the trial defense counsel scarcely could take this position before the convening authority if the same convening authority was going to consider both cases, since doing so would reduce the chances for any favorable action for his client Endresen. A seeming institutional insensitivity to such conflicts has not escaped notice. *United States v. Evans,* 1 M.J. 206, 209 (CMA 1975); *United States v. Blakey,* 1 M.J. 247, 248 (CMA 1976); *United States v. Davis,* 3 M.J. 430, 431 n. 7 (CMA 1977).

It may, of course, be that the trial defense counsel complied fully with Disciplinary Rule 5–105(C) of the American Bar Association Model Code of Professional Responsibility (adopted for courts-martial by Army Reg., 27–10, para. 5–8 (1982), and earlier editions). If so, the trial judge's question whether counsel had acted in any manner inconsistent with his duties as defense counsel presented counsel an appropriate opportunity to disclose the multiple representation and the fact, if it was a fact, of his compliance with DR 5–105(C). Counsel would do well to treat that routine question from the court-martial script as not merely limited to matters that might amount to a statutory disqualification, such as having acted in a prosecutorial capacity. *See United States v. Breese,* 11 M.J. 17, 22 n. 13 (CMA 1981). I fear the significance of the question was overlooked here. Due to the lack of any specific indication of prejudice, reversal has not been required; however, the next case may be different.