**UNITED STATES**

v.

**Christopher W. BRAKEBUSH, 392 86
3907 Machinist's Mate Third
Class (E-4), U.S. Navy.**

**NMCM 91 1003.**

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 29 Jan. 1991.

Decided 14 May 1992.

Lt Nanette M. Derenzi, JAGC, USNR,
Appellate Defense Counsel.

Maj. Laura L. Scudder, USMC, Appellate
Government Counsel.

Vaughan E. Taylor, Civilian Defense
Counsel.

Before JONES, REED and LAWRENCE,
JJ.

REED, Judge:

Appellant was tried at a general court-martial before a military judge sitting alone. He was charged with eight specifications of carnal knowledge in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (Charge I), and eight specifications of indecent acts with a minor in violation of Article 134, UCMJ, 10 U.S.C. § 934 (Charge II). Pursuant to a pretrial agreement, appellant pled guilty to two specifications dealing with three indecent acts under Article 134 and not guilty to the remaining offenses under Articles 120 and 134. Pursuant to his pleas, he was found guilty; all offenses under Article 120 were then dismissed by the military judge at the request of the Government. The Government then attempted to prove the remaining six specifications under Article 134; however, the appellant was acquitted of these offenses.

As a result of the guilty findings, appellant was sentenced to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances and reduction to the pay grade of E–1. The convening authority approved the sentence and, except for the discharge, ordered it executed but suspended the forfeiture for 24 months from the date the sentence was adjudged.

Appellant's allegations of errors [1] center on (1) a possible conflict of interest that existed at trial because trial defense counsel had seen appellant's wife for legal assistance matters prior to trial and (2) trial defense counsel's failure to present easily obtainable matters in extenuation and mitigation during the sentencing and post-trial phase of the proceedings. Appellant, in his oral argument before this Court, has not questioned trial defense counsel's performance on the merits of the trial and concedes that his performance there was certainly sufficient. A brief statement of the facts in this case, as found by this Court, is necessary to understand our holding.

Sometime in September of 1989, in Orlando, Florida, appellant on two occasions committed an indecent act upon his six-year old adopted daughter by entering the child's room at night, lying beside her in bed, and placing his erect penis upon her leg and private parts with the intent to arouse his sexual desires.

On or about 3 November 1990, in Saint Marys, Georgia, appellant, while lying in bed with his wife, was joined by his adopted daughter who lay down between them. When appellant's wife left their bed to spend the rest of the night on their couch, appellant placed his erect penis upon his stepdaughter's leg and private parts with the intent to arouse his sexual desires.

On the three occasions that these indecent acts occurred, the appellant first removed the undergarments of his stepchild.[2]

On 7 November 1990, the child told her mother about appellant's indecent acts with her. The mother immediately reported the allegations to the Naval Investigative Service. Appellant was apprehended that same day, confessed to three incidents of indecent acts, and asked for psychiatric help.

On or about 16 November 1990, as a result of the allegations made by her daughter against her husband, Mrs. Brakebush sought advice from the local military legal assistance office. She wanted to know how to break her lease, obtain child support from her husband for her three minor children, and get financial help to move the children and herself to Wisconsin. She was seen by a military lawyer, Lieutenant (LT) McConnell, who was subsequently detailed to, and in fact did, represent her husband at his general court-martial. During the legal assistance visit, Mrs. Brakebush explained that her husband faced possible charges of child molestation and she needed advice. She further indicated that she was not considering divorce at that time. She asked about the lease on their apartment, moving expenses, and child sup-

**1.** I. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HE WAS REPRESENTED SOLELY BY A DETAILED DEFENSE COUNSEL WHO WAS SO BURDENED BY AN ACTUAL CONFLICT OF INTEREST THAT IT ADVERSELY AFFECTED HIS PERFORMANCE AT THE SENTENCING STAGE OF THIS COURT–MARTIAL.
II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HE WAS REPRESENTED SOLELY BY A DETAILED DEFENSE COUNSEL WHO WAS SO BURDENED BY AN ACTUAL CONFLICT OF INTEREST THAT IT ADVERSELY AFFECTED HIS PERFORMANCE AT THE POST TRIAL, PRE–ACTION STAGE OF THIS COURT–MARTIAL.
III. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL *PER SE* AT THE SENTENCING STAGE OF HIS COURT–MARTIAL.
IV. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL *PER SE* AT THE POST TRIAL, PRE–ACTION STAGE OF HIS COURT–MARTIAL.
V. AN APPROVED SENTENCE THAT INCLUDES FIVE YEARS OF CONFINEMENT FOR THREE INDECENT ACTS IS INAPPROPRIATELY SEVERE.

**2.** During the providence inquiry, appellant indicated he left the child's undergarments alone. During trial, however, the stepchild testified and indicated appellant removed her undergarments before the indecent acts occurred. We find the child's testimony believable.

port. She was advised to remove her name from the lease of their apartment and to seek help from Navy Relief for any move. She was told generally the amount of child support to which she might be entitled. LT McConnell recalls only the one meeting. Mrs. Brakebush recalls a subsequent meeting at the legal assistance office, again with LT McConnell, where they discussed a power of attorney. Thereafter, when Mrs. Brakebush sought help at the legal assistance office, she was told that she would have to see a different attorney since LT McConnell had been detailed to represent her husband at his court-martial.

LT McConnell subsequently advised appellant that he had seen appellant's wife during a legal assistance visit and of the nature of the contact with her. We find that appellant, notwithstanding trial defense counsel's advice to his wife, still wished to be represented by LT McConnell at trial.[3]

■ Appellant, in his first two assignments of error, alleges ineffective assistance of counsel because he was represented by LT McConnell who was "so burdened

by an actual conflict of interest that it adversely affected his performance" both during trial and subsequent thereto—the conflict arising from LT McConnell advising appellant's wife and then representing appellant at trial. Appellant argues the divergent interests of the two resulted in an actual conflict of interest.[4]

The Supreme Court has held that "the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by ... [a] lawyer simultaneously representing conflicting interests." *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942).

Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of a trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such conflict as may exist.[5] Indeed, ...

---

3. Appellant now indicates he has no recollection of LT McConnell ever informing him that he gave legal advice to appellant's wife, although appellant admits that, "[a]t that time, my state of mind was not totally clear; therefore, I cannot positively say he did not inform me." LT McConnell, however, is clear in his recollection that such advice was given.

4. Appellant alleges LT McConnell established an attorney-client relationship with appellant's wife during the legal assistance visit; LT McConnell claims, however, that no such relationship arose during this "ten minute" visit. For the purpose of this decision, we assume, without deciding, that an attorney-client relationship did exist as a result of Mrs. Brakebush's visits with LT McConnell.

5. This language generally comports with the guidance promulgated by the Judge Advocate General in his instruction on the "Professional Conduct of Judge Advocates." *See* Judge Advocate General Instruction (JAGINST) 5803.1 of 26 October 1987. It provides in part that:
RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE
a. A judge advocate shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the judge advocate reasonably believes the representation will not adversely affect the relationship with the other client; and,

(2) each client consents after consultation.
b. A judge advocate shall not represent a client if the representation of that client may be materially limited by the judge advocate's responsibilities to another client or to a third person, or by the judge advocate's own interests, unless:
(1) the judge advocate reasonably believes the representation will not be adversely affected; and,
(2) the client consents after consultation.
When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantage and risks involved.
RULE 1.8 CONFLICT OF INTEREST; PROHIBITED TRANSACTIONS
Judge advocates shall strictly adhere to current Department of the Navy Standards of Conduct Regulations and shall not:
....
e. represent a client whose interests are materially adverse to those interests of a former client, unless the former client consents, or use information from the former representation to the disadvantage of that former client, except as permitted or required under Rule 1.7 above or when the information has become otherwise generally known.
RULE 1.9 CONFLICT OF INTEREST; FORMER CLIENT

trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. "An 'attorney ... is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'"

*Cuyler v. Sullivan*, 446 U.S. 335, 346–47, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) (footnote added) (citations omitted).

The legal relationship between LT McConnell and Mrs. Brakebush was terminated, with no complaint from Mrs. Brakebush, when LT McConnell refused to see her subsequent to his appointment as appellant's detailed defense counsel. She saw another legal assistance attorney for further advice. LT McConnell advised appellant of his prior contact with Mrs. Brakebush, and appellant did not object to LT McConnell's continuing to represent him. "Christopher Brakebush indicated to me that he fully understood and that his decision to retain me as counsel was unaffected." LT McConnell's Affidavit of 5 December 1991 at 2, Government Motion To Attach filed 16 December 1991 (hereinafter "McConnell affidavit").

> LT McConnell further indicates:
> I did not deal with the matter of this conversation in writing, or place a statement on the record about it, ... because the meeting [with Mrs. Brakebush] was so short, so innocuous, and so wholly unrelated to the facts of the case against my client, that I felt that no further action was necessary. I informed my client of the conversation not because I felt there was a conflict of interest to address but in order to be completely open with him.

*Id.* at 3.

"Multiple representation does not violate the Sixth Amendment unless it gives rise to [an actual] conflict of interest." *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct.

1173, 1177, 55 L.Ed.2d 426 (1978). "A defendant who shows that a conflict of interest actually affected the adequacy of his representation [however] need not demonstrate prejudice." *Id.*

> But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.... We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

*Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. *See also United States v. Breese*, 11 M.J. 17 (C.M.A.1981).

We are unable to ascertain any actual conflict of interest from LT McConnell's previous contact with Mrs. Brakebush and his subsequent representation at trial of appellant. LT McConnell indicates:

> My short conversation of approximately ten minutes with Mrs. Brakebush consisted of very general information on what she needed to accomplish to get home to Wisconsin, culminating only in providing procedural information and nothing of a substantive nature. She *did not* discuss her husband's behavior, and particularly not as grounds for a divorce. She in no way indicated that she wanted revenge for her husband's actions; in fact, her demeanor indicated to me that she felt sorry for him and that he needed help.

McConnell Affidavit at 1 (emphasis added).

The statement of Mrs. Brakebush, dated 23 January 1992, (appellant's Motion For Leave To Attach Document filed 23 February 1992), supports our conclusion that no conflict of interest existed between her and

---

A judge advocate who has represented a client in a matter shall not thereafter:

a. represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or,

b. use information relating to the representation to the disadvantage of the former client or to the judge advocate's own advantage, except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

her husband, for no antagonism is reflected therein. Additionally, appellant indicated to his wife, when discussing his behavior with his stepdaughter, that "he was sick," and the evidence indicates the concern of Mrs. Brakebush that appellant get help.[6] Record at 72. In his affidavit to this Court dated 21 October 1991, appellant, in fact, indicates that he now wishes that LT McConnell had questioned his wife further during the sentencing phase of the trial. "My wife has known me for several years and has a thorough knowledge of who I am."[7] This does not indicate such an antagonism between the parties to lead one to believe that a conflict of interest existed.

We are convinced by the evidence of record and the affidavits submitted to this Court that no conflict of interest existed in this case.[8] We find appellant's first two assignments of error to be without merit.

■ In his third assignment of error, appellant alleges "[t]he Detailed Defense Counsel's lack of presentation of available character evidence ... during the sentencing portion of his trial amounts to *per se* ineffective assistance of counsel." We do not agree.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal ... has two components. First, the defendant must show

that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

As all the Federal Courts of Appeals have now held, the proper standard for attorney performance is that of reasonably effective assistance.... When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.

*Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (citations omitted). *See also United States v. Stephenson*, 33 M.J. 79 (C.M.A.1991).

Appellant specifically alleges that LT McConnell's failure to call the appellant's parents to testify as to appellant's overall

---

6. We do note that when Mrs. Brakebush initially confronted appellant about her child's allegations, appellant indicated what he had done and admitted he needed help. Mrs. Brakebush responded that someone should "cut his [appellant's] genitals off." We find this to be a natural response by a mother when she first learns from the perpetrator that her child has been sexually molested and not to be an indication of continuing animosity toward her husband.

7. On 12 February 1991, this Court issued an order to appellant for him to show cause why the unsworn statement of Mrs. Brakebush should be attached to the record as an affidavit. In his response, appellant, through counsel, indicated efforts to get an affidavit "were frustrated by Penny R. Brakebush's antagonism toward her husband and her filing for divorce from him." Civilian appellate counsel clarified this statement by indicating during oral argument before this Court that Mrs. Brakebush had not filed for divorce. Additionally, there was no evidence before this court by affidavit or other-

wise about any "antagonism" of Mrs. Brakebush, and we do not consider counsel's mere assertions in the pleadings, to which the Government took exception, to be evidence.

8. We are mindful of the additional language found in *Cuyler* that trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel.

An "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not [and cannot] initiate an inquiry.

*Cuyler*, 446 U.S. at 346, 100 S.Ct. at 1717 (citations omitted).

We urge defense counsel in the future when a conflict of interest may arise from multiple representation, or be alleged, to present the matter to the trial court and have such representation made a matter of record.

good character and their willingness to help him receive treatment was a serious deficiency.[9] We do not agree. LT McConnell has indicated to this Court:

> That the parents of Christopher Brakebush sat in the first row of the gallery directly behind their son for the entire trial.... I still believe that their mere presence was testimony enough of their parental support, especially in a trial without members present who might be persuaded by the pleas of an accused's parents.

> That the parents were not called to testify because they could not offer any testimony of consequence.

> In my professional opinion, the crucial testimony in this case was from Capt. Gibson, the psychiatrist whom Christopher had been consulting. This testimony was fully developed and effectively presented. In my opinion, this was the evidence which could persuasively establish extenuation and mitigation, not the opinions of family or friends.

McConnell Affidavit at 3–4.

While each attorney will evaluate and approach a case differently, we cannot say that LT McConnell's approach was deficient. Having seen the slight effect of evidence of good character from friends and family on a military judge sitting as a sentencing authority, we, too, can probably say the best approach to receiving leniency for appellant was the psychiatric testimony. The psychiatrist specifically stressed the need for appellant to receive treatment and carefully related the effect lack of treatment, *i.e.*, confinement, might have on his recovery. Appellant makes much of the fact that his parents would have testified that they would provide financial support for his treatment. However, nothing

in the record before us indicates that appellant was not capable of financially providing for his own treatment, or that the parents could ensure that appellant would actually attend treatment sessions were he not confined.

Appellant also argues there was "no reason whatsoever, other than laziness, not to call [the] parents." Assignment of Errors and Brief in Support of Appellant at 17. Again, we must disagree. Perhaps if appellant had come from a disadvantaged home or himself had been abused, the parents could testify to those facts and opine how those circumstances had led to the current offenses. However, the testimony appellant's parents had to offer would focus on appellant's "character" and the fact that he "had never been in trouble before." William and Nancy Brakebush's Affidavit of 21 October 1991 (Document III to appellant's Motion For Leave To Attach Documents filed 5 November 1991.) This testimony would allow the Government to argue that appellant was not disadvantaged, had no excuse for his current behavior, and therefore should be treated more harshly than an accused who came from a deprived background.

While we cannot say we would have handled this case in the same way as LT McConnell, we can say that he provided reasonable and effective representation. We find appellant's third assignment of error to be without merit.

■ Appellant argues in his fourth assignment of error that when trial defense counsel's tactics failed to work at trial he should have changed course and at least then have provided the extenuation and mitigation letters readily obtainable from family and friends.[10] We note that LT

---

9. We note that trial defense counsel did present extensive evidence by oral testimony from a Navy psychiatrist who had been treating appellant and from a chief warrant officer who had known appellant and could comment on his military performance. Additionally, several exhibits were entered into evidence from the appellant's service record, and the appellant himself made an unsworn statement.

10. We note from the affidavit to this Court of the Brakebush's family attorney, George K.

Steil, Sr., that Mr. Steil had provided information directly to the convening authority in this case. In this letter he explained to the convening authority that appellant's parents were willing to assume full responsibility for psychiatric care for him and would give him employment if he was discharged so that he could support his wife and their three children. This letter was available to and received by the convening authority prior to his action on this case. In fact, it was received prior to referral of the charges

McConnell did submit a clemency petition to the convening authority on behalf of appellant. The information provided included appellant's remorse over the offenses, his current treatment record, and the need for additional treatment, as well as comment on appellant's previously unblemished disciplinary record. LT McConnell also did an excellent job in contrasting the sentence received by other miscreants committing similar offenses with the sentence received by appellant. We cannot say that LT McConnell's approach to clemency was unreasonable. Appellant's fourth assignment of error is also without merit.

■ Finally, we specifically find that confinement for 5 years is appropriate for an accused who violates the trust of a stepdaughter by molesting her three times over a period of 15 months, inflicting emotional distress that the victim may be years in overcoming. Appellant's final assignment of error is without merit.

The findings and sentence, as approved on review below, are affirmed.

Senior Judge JONES and Judge LAWRENCE concur.

to a court-martial. *See* George K. Steil Sr.'s Affidavit of 1 October 1991 at 4 (Document IV to appellant's Motion For Leave To Attach Documents filed 5 November 1991). It is clear from Mr. Steil's affidavit that LT McConnell was aware of, and in fact encouraged, the correspondence between Mr. Steil and the convening authority.