**UNITED STATES**

v.

**Richard P. AUGUSZTIN, 046 66 1630, Yeoman Second Class (E–5), U.S. Navy.**

**NMCM 88 1856.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 19 Jan. 1988.

Decided 12 Feb. 1990.

Lt. Jeffrey S. Horwitz, JAGC, USNR, Appellate Defense Counsel.

Lt. Sigurd R. Peterson, Jr., JAGC, USNR, Appellate Government Counsel.

Lt. Rosalyn D. Calbert, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, C.J., and ALBERTSON and JONES, JJ.

JONES, Judge:

Contrary to his pleas, appellant was convicted by the military judge sitting alone as

a general court-martial for dereliction in the performance of his duties by willfully failing to deliver an Incident Complaint Report to his legal officer and two separate instances of soliciting homosexual acts by Airman L and Airman H in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934, respectively. Appellant was sentenced to a dishonorable discharge, confinement for one year and one day, forfeiture of all pay and allowances, and reduction to pay grade E-1. The convening authority approved the sentence as adjudged.

After review of the initial assignments of error,[1] we directed oral argument at which the following specified issues were addressed by counsel:

### I

WHETHER THE ACCUSED KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY WAIVED HIS RIGHT TO CONFLICT–FREE COUNSEL?

### II

WHETHER THE MILITARY JUDGE PROPERLY ACCEPTED APPELLANT'S WAIVER OF HIS RIGHT TO CONFLICT–FREE COUNSEL?

### III

WAS APPELLANT DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE ARRANGEMENT THROUGH WHICH THE GOVERNMENT WAS ABLE TO OFFER PROSECUTION EXHIBIT NO. 6 WITHOUT OBJECTION?

We address only the first specified question, finding it dispositive in resolving the issues centered upon the right to conflict-free counsel, *see Duncan v. Alabama,* 881 F.2d 1013, n. 5 (11th Cir.1989), the focus of our consideration being civilian defense counsel's dual representation of appellant and a Seaman Shelby.

Prosecution Exhibit 6 is a four-page handwritten sworn statement of Seaman Shelby, provided to the Naval Investigative Service, admitting his own solicitation of Airman H to obtain cocaine for him. Relevant to appellant's case, the same sworn statement discusses Seaman Shelby's role in facilitating the meeting between Airman H and appellant resulting in the interception of the report constituting the dereliction of duty, and Seaman Shelby's subsequent delivery of that report from appellant to Airman H. More significantly, Seaman Shelby's statement (Prosecution Exhibit 6) contains admissions by appellant that "he wanted [Airman H's] body" and additionally desired to perform homosexual acts upon Airman L. Some eight days after making the statement, Seaman Shelby issued a retraction (Defense Exhibit C). Subsequently, Seaman Shelby was tried at court-martial represented by civilian counsel, Mr. Edmunds, on various charges including disrespect, theft and solicitation of the same Airman L to commit sodomy with appellant. (R. 13–14) (Article 32, p. 2).

Prior to trial, at a Rule for Courts–Martial (R.C.M.) 802 conference, the military judge was apprised of appellant's civilian defense counsel, Mr. Edmunds' representation[2] of Seaman Shelby at Shelby's earlier

---

1. Appellate defense counsel submitted the following assignments of error:

I. THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE PROSECUTION EXHIBIT 6, THE STATEMENT OF SEAMAN SHELBY TO THE NAVAL INVESTIGATIVE SERVICE, DESPITE THE FACT THAT THE ADMITTED STATEMENT WAS IN VIOLATION OF THE RULE AGAINST HEARSAY, AND THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT.

II. APPELLANT WAS DENIED EFFECTIVE REPRESENTATION OF COUNSEL BECAUSE MR. ALAN EDMUNDS, THE TRIAL DEFENSE COUNSEL, WAS BURDENED BY CONFLICTING INTERESTS.

III. A SENTENCE WHICH INCLUDES A DISHONORABLE DISCHARGE AND CONFINEMENT OF ONE YEAR AND A DAY IS INAPPROPRIATELY SEVERE UNDER THE FACTS OF THIS CASE.

2. We are unable to discern whether civilian counsel continued to represent Seaman Shelby at the time of appellant's trial for the purpose of submitting matters under Rules for Court–Martial 1105 and 1106 and for any petitions for clemency Seaman Shelby desired to make. We do know, however, that Seaman Shelby, on the

court-martial and the existence and intended use of Prosecution Exhibit 6 by the Government. Following the entry of not guilty pleas to all charges, the military judge advised appellant of the Government's expected introduction of Seaman Shelby's statement against appellant and defense counsel's expected offer of Defense Exhibit C, the retraction of the same statement by Seaman Shelby, made upon the advice of counsel, apparently the same Mr. Edmunds. At trial, Prosecution Exhibit 6 was offered and admitted, without any objection by defense counsel. Thereafter Defense Exhibit C was offered and admitted, without any objection by trial counsel.

At the outset, we observe that the difficulties this case presents are the direct result of the prosecution's using civilian defense counsel's conflict of interest as a means of affecting the evidence going before the trier of fact instead of moving for his disqualification before the trial. *See United States v. Iorizzo*, 786 F.2d 52 (2nd Cir.1986). When the witness, Shelby, was apparently in the courthouse and available to testify throughout the trial, we can conceive of no legitimate reason for the prosecutor to have entered into such an arrangement whereby the truth determining process of direct and cross-examination is avoided.

In attempting to represent appellant, Petty Officer Augusztin, Mr. Edmunds was confronted with an unavoidable conflict of interest. Shelby was one of the key government witnesses against appellant and as stated by trial counsel would "testify as to material facts for each element," of the charged offenses.[3] Although there was only one overlapping charge, an attorney's conflict of interest is no less because his representation of those clients does not concern the same matter. "Two clients' interests in separate matters may be just as opposed, and the potential for conflict just as serious." *United States ex rel. Tineo v. Kelly*, 870 F.2d 854, 857 (2nd Cir.1989). Cross-examination to test the credibility of Shelby, an area of inquiry directly related to the guilt or innocence of appellant, was thus foreclosed to Mr. Edmunds.[4] The *quid pro quo* arrangement to permit both Shelby's original statement and subsequent recantation to come into evidence without objection from either side and thus avert the need to cross-examine Shelby was not the result of a tactical judgment by a conflict-free lawyer that such evidence would not be helpful to appellant. Rather, the decision to forgo confrontation of the witness Shelby must be viewed in some measure as being made to protect the interest of defense counsel. *Iorizzo*, at 58.

Defense counsel abandoned appellant's right to confront and cross-examine Shelby in favor of a two sentence retraction that did little to deflect the straightforward impact of the initial statement. At the time, defense counsel's abandonment was viewed by all concerned as necessary to allow defense counsel to avoid ethically improper conduct. This simply reverses the priorities that the attorney owes to his client because it puts the lawyer's concerns ahead of the client's needs, and then shapes the client's needs to eliminate the attorney's problems created by a direct conflict of interest. *United States v. Calabria*, 614 F.Supp 187, 193 (E.D.Pa.1985). Augusztin, however, as a client, was entitled

---

advice of counsel, invoked his Article 31, UCMJ, 10 U.S.C. § 831, rights and refused to testify at appellant's Article 32 pretrial investigation on 3 November 1987 because he also was "facing court-martial charges." Appellant's court-martial was held 19 January 1988.

**3.** As may be gleaned from his opening statement (R. 16–17), trial counsel envisioned proving, through the use of Seaman Shelby's statement, that appellant solicited both Airman L and Airman H with the specific intent that sodomy be committed. In his closing argument, trial counsel argued the apparent credibility of Seaman Shelby as a "close friend" of appellant and one without motive to misrepresent as relating to both specifications involving the specific intent to commit sodomy; additionally, he used the Shelby statement in describing appellant's connection with the report involved in the dereliction of duty charge.

**4.** An exploration of possible bias on the part of Seaman Shelby against appellant as his former roommate was foreclosed as well by defense counsel's decision not to cross-examine. (R. 21, 119).

to counsel unburdened by the ethical constraints resulting from prior representation of the Government's key witness. *Iorizzo,* at 58.

## I

As encapsulated in the preliminary discussion in *Duncan v. Alabama,* 881 F.2d 1013, 1016 (11th Cir.1989):

The sixth amendment assures a criminal defendant the right to effective assistance of counsel which includes the right to counsel who is unimpaired by conflicting loyalties. The Supreme Court has acknowledged that "counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest," which is "perhaps the most basic of counsel's duties." *Strickland v. Washington,* 466 U.S. 668, 690, 692, 104 S.Ct. 2052, 2065, 2067, 80 L.Ed.2d 674 (1984). The Court has recognized that the harm caused by representing conflicting interests is difficult to measure because the harm "is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Therefore when an attorney labors under an actual conflict of interest, the defendant need not show prejudice in order to obtain a reversal of his conviction. *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987); *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Holloway,* 435 U.S. at 489, 98 S.Ct. at 1181; *see Glasser,* 315 U.S. at 75–76, 62 S.Ct. at 467 ("the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.").

The Supreme Court has recognized that the purpose of providing assistance of counsel:

"is simply to ensure that criminal defendants receive a fair trial," and that in evaluating Sixth Amendment claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." Thus while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 1696–97, 100 L.Ed.2d 140 (1988). (Citations omitted.)

As the Third Circuit has stated in *United States v. Dolan,* 570 F.2d 1177, 1184 (1978):

[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver. (Cited with approval in *Wheat,* 108 S.Ct. at 1698–9). Under such circumstances, the court can elect to exercise its supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representation.

Thus "[n]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Wheat,* 108 S.Ct. at 1698.

## II

■ Turning to the Government's contention that appellant validly waived his

right to an unburdened counsel who might fully confront and cross-examine Shelby, we begin by recognizing that an accused is presumed not to waive his right to conflict-free counsel. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Davis*, 3 M.J. 430 (C.M.A.1977).

> [U]ltimately [it] must be the responsibility of the trial court *upon the appearance of a conflict* to bring the fact of its existence and the resulting dangers which are reasonably foreseeable to the attention of each affected defendant so that he can make an informed judgment at the time as to whether he wishes to continue with his present counsel or wishes new counsel.

*United States v. Breese*, 11 M.J. 17, 22 (C.M.A.1981), *citing Davis*, 3 M.J. at 434 (additional citations omitted).

■ *Breese* reiterates the recommendation of *Davis* that the military judge employ a procedure like that utilized in *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir.1975). In instances of multiple representation,

> the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel and that he voluntarily waives his Sixth Amendment protections.

3 M.J. at 434.

In the recent decision in *Duncan v. Alabama*, 881 F.2d 1013, 1017 (11th Cir.1989), the court, citing in part the same Fifth Circuit procedure from *Garcia*, stated that for the defendant to knowingly and intelligently waive the right to conflict free counsel, he must be told (1) that a conflict of interest exists, (2) the consequences to his defense from continuing with conflict laden counsel; and (3) that he had a right to obtain other counsel. Concluding that Duncan had validly waived his right, the court relied on the fact that he conceded

that he was aware of his right to have other counsel present; moreover, his two counsel fully explained the specific nature of the conflicts each had. Additionally, at Duncan's first and third arraignments, the trial judge appointed "independent attorneys" to discuss the problem with him. At a subsequent evidentiary hearing, the second "independent" counsel testified that he had spoken with Duncan for 30 to 45 minutes and discussed the specifics of the conflict and the potential effect on Duncan's defense. Therefore the magistrate's determination that Duncan had validly waived his right to conflict-free counsel was upheld.

■ Waiver of counsel must not only be voluntary, but must constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter dependent in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

In assessing any accused's level of comprehension of the dangers associated with waiver, a court may devise a variety of means to gain the necessary insight into whether the waiver is knowing and intelligent:

> On the whole, we think that questions designed to elicit from the defendant a narrative statement of his understanding are preferable to questions designed to elicit mere "yes" or "no" answers. The former methods are used by the court pursuant to Fed.R.Crim.P. 11 in determining whether to accept a defendant's plea of guilty, and would be appropriate in determining whether to accept an attempted waiver of the right to an attorney with undivided loyalty. *See, e.g.,* *United States v. Garcia*, 517 F.2d 272, 277–78 (5th Cir.1975):
>
> > As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty

to question the district court as to the nature and consequences of his legal representation.

. . . . .

Further, the court's inquiry in each instance should take place after the defendants have had a reasonable time to digest and contemplate the risks posed by joint representation.

. . . . .

[T]he court should advise the defendant of his right to separate and conflict-free representation, instruct the defendant as to problems inherent in being represented by an attorney with divided loyalties, allow the defendant to confer with his chosen counsel, encourage the defendant to seek advice from independent counsel, and allow a reasonable time for the defendant to make his decision. If a reasonable time is not allowed to the defendant, both the opportunity for the defendant to make a knowing and intelligent decision and the opportunity for the court to assess correctly whether such a decision has been made are minimized.

*United States v. Curcio,* 680 F.2d 881, 889–890 (2nd Cir.1982).

### III

■ In the course of determining whether appellant's waiver of conflict-free counsel was voluntary, knowing, and intelligent, the military judge asked appellant if he understood that there is "at least the appearance of a potential conflict of interest here between the interests of ... Shelby, and your interests in this case?" Appellant responded that he did. The military judge also asked whether appellant had discussed the fact that Shelby's interests might be different from his own, but failed to obtain a response. The military judge asked appellant if he understood that if Shelby were called as a witness that his defense counsel would be "entitled to, and obligated to, if he felt it necessary, to cross-examine him concerning any statements he may have made to the NIS." Appellant said he did. Appellant also provided affirmative responses to the questions whether he understood the "potential for a conflict of inter-

est here" and whether he "specifically waive[d] any potential conflict of interest having to do with Mr. Edmunds' representation of SN Shelby."

At no time did the military judge articulate to appellant the specific nature of the conflict. No advice was provided, for example, that his counsel could not use information acquired in the course of the representation of Shelby to discredit Shelby if he testified. No mention was made of any possible restraints on counsel's representation of appellant predicated upon his prior defense of Shelby, that included an overlapping charge of solicitation of sodomy of Airman L. Although the military judge explained counsel's right to cross-examine Shelby, he failed to elucidate any restrictions that might be imposed upon that right as a result of the conflict. Although trial counsel assured the military judge that Shelby's court-martial had been completed, there was no indication whether the convening authority's action had been taken, nor whether counsel had been excused from his post-trial responsibilities in representing Shelby. Most importantly, the military judge put his own imprimatur upon the arrangement by which the Government would offer the Shelby statement, and the defense would offer the retraction, suggesting, in the absence of any advice to the contrary, that whatever potential conflict might have been present would be cured by such a process. Such is obviously not the case. Civilian defense counsel had an actual conflict of interest. *See* ABA Model Rules of Professional Conduct Rule 1.6, Confidentiality of Information; Rule 1.7, Conflict of Interest, General Rule; Rule 1.9(b), Conflict of Interest, Former Client. *See also* NAVJAGINST 5803.1, Professional Conduct of Judge Advocates, 26 Oct 1987; *United States v. Perez,* 694 F.Supp. 854 (S.D.Fla.1988) (Government motion to disqualify defense counsel granted where government's "star witness" would be subject to cross-examination from his former attorney and alternative whereby that counsel would not personally examine witness but instead employ an independent co-counsel to handle that portion of the

trial found to be unacceptable); *United States v. Moscony,* 697 F.Supp. 888 (E.D. Pa.1988); *United States v. James,* 708 F.2d 40 (2nd Cir.1983); *United States ex rel. Tineo v. Kelly,* 870 F.2d 854 (2nd Cir.1989) (compromise offered by defense counsel to limit cross-examination of former client, now key government witness, to information contained in his "rap sheet," not acceptable professional conduct as attorney should never offer to be less thorough or diligent in the interest of his client).

In fairness to the military judge, he was presented with handwritten statements signed by both appellant and Seaman Shelby waiving "any conflict." The statements are similar, each noting that Mr. Edmunds had been retained as counsel, that each individual was aware that Mr. Edmunds represented or would be representing the other at the time counsel was retained, that Mr. Edmunds had explained his "potential conflict of interest" to each of them, and that he had explained their constitutional right to an independent counsel. Appellant's statement further indicates that he had read Rules of Professional Conduct 7–107 and 7–108, presumably the California rules dealing with conflict of counsel. Interestingly, Shelby's statement, as does appellant's, contains the provision that he wants Mr. Edmunds as his lawyer, indicative of the fact that an ongoing attorney-client relationship continued between the two. The statements were apparently drafted on the morning of trial prior to the court's opening.

Appellant's affidavit, on the other hand, asserts that the potential conflict of interest was never explained to him by his counsel:

3. Mr. Edmunds revealed to me before my court-martial that he also represented Seaman Brian K. Shelby at his court-martial.

4. When Mr. Edmunds first told me that he was representing Seaman Shelby, he asked if that was okay with me. He stated that some people might question the fact that he was representing both of us. I asked if there would be any problems with him representing both of us at the different court-martials and he said no. He specifically told me that his representation of Seaman Shelby would have no effect upon the way he represented me at my court-martial.

5. Mr. Edmunds never explained his potential conflict of interest in representing Seaman Shelby and myself. On the date of my court-martial, immediately before it began, Mr. Edmunds prepared a handwritten "conflict of interest waiver" for me to sign. He told me that the document said it would be okay for him to represent Seaman Shelby and myself at our trials. I signed the waiver because I was told to sign it. I never read the waiver. I have never read Rule 107 and 108 of the Rules of Professional Conduct.

Although we need not resolve the obvious conflict between the statement signed by appellant prior to trial and his affidavit before this Court regarding the sufficiency of the explanation provided by counsel as to his "potential conflict of interest," we heed the skepticism expressed by the Supreme Court—"Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." *Wheat,* 108 S.Ct. 1692 at 1699.[5]

█ We find the military judge placed too great a reliance upon the assertions contained in the handwritten waivers, both apparently drafted just prior to coming into trial by the counsel whose capacity to act in appellant's interests was at issue. Although defense counsel must always remain alert to avoid unnecessary and unwise conflicts of interest, *United States ex rel. Tonaldi v. Elrod,* 716 F.2d 431, 436–437 (7th Cir.1983), and trial counsel must bring such conflicts promptly to the attention of the military judge, *see United States v. Iorizzo,* 786 F.2d 52 (2nd Cir.1986), it is the

5. The Government First Motion For Enlargement Of Time indicates that the requested delay was required to await civilian defense counsel's affidavit, presumably to address this same issue, however, such affidavit was apparently never received as it is not within the record.

military judge alone who is responsible to undertake the inquiry of the accused to determine whether there is a voluntary, knowing and intelligent relinquishment of his right to conflict-free counsel—*i.e.*, does the record demonstrate that the accused "knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)). We find the appellant's waiver insufficient in this case because the military judge neither explained nor elicited appellant's *understanding* of the details of his attorney's actual conflict of interest nor the potential perils of such a conflict. No indication was given appellant that his right to confront and cross-examine Shelby was realistically nonexistent given counsel's past, if not ongoing, attorney-client relationship with Shelby. The military judge's apparent endorsement, without question,[6] of the *quid pro quo* of the Government's offering of the Shelby statement to be followed by the defense's offering of the retraction, each to be without objection from the other side, served only to incline one to believe that any conflict previously existent would be removed by such process. At no time did the military judge suggest or ever advise appellant that he might seek to discuss this matter with independent counsel, notwithstanding the fact that military defense counsel had, as always, been detailed but relieved of his duties by appellant moments earlier.[7] Additionally, we reiterate the guidance of the Court of Military Appeals in *Davis* and *Breese*—the military judge

should seek to elicit a narrative response from the accused as to his understanding of these matters involving his waiver of the right to conflict-free counsel much as the military judge must do in evaluating the providence of an accused's pleas of guilty.[8] *See United States v. Curcio* at 889.

Recognizing the requirement this places upon the military judge, the *Breese* Court, nevertheless, has concluded:

> While we do not relish encumbering records of trial with additional recitals, we cannot ignore the Supreme Court's comments that, "Several Courts of Appeal already invoke their supervisory power to require similar inquiries," and that "[a]s our promulgation of Rule 44c suggests, we view such an exercise of the supervisory power as a desirable practice." *Cuyler v. Sullivan, supra,* 446 U.S. at 346 n. 10, 100 S.Ct. at 1717 n. 10.

11 M.J. at 22.

■ A court is not free to inquire deeply into the attorney-client relationship nor is it free to elicit in advance the substance of a defendant's testimony. *Tonaldi v. Elrod* at 438. As the Supreme Court has recognized,

> [u]nfortunately, for all concerned, ... a court must pass on the issue of whether or not to allow a waiver of a conflict of interest by ... [an accused] not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly.

*Wheat,* 108 S.Ct. at 1699. Thus, the military judge "must be allowed substantial

---

6. At a minimum, we would have expected the military judge under these circumstances to have obtained appellant's express consent to such an arrangement as he would with any stipulation of testimony.

7. The detailed defense counsel was absent from the courtroom, apparently with the consent of appellant, prior to his excusal by appellant in court.

8. We suggest also that the military judge should have asked Shelby (who apparently was waiting in the witness room at trial) to come into court so that the military judge might determine the precise status of his attorney-client relationship

with Mr. Edmunds and whether his purported waiver of "any possible conflict of interest that [might] arise in [the] proceeding" was a knowing and intelligent abandonment of his interests under the attorney-client relationship, to include any confidences shared with his attorney that might now prove to his detriment. Even if Shelby had knowingly consented to Mr. Edmunds' representation of appellant, that consent would not be dispositive since *Wheat* holds that the trial court's independent duty to assure a fair trial may override such a waiver. *United States ex rel. Tineo v. Kelly,* 870 F.2d 854, 858 (2nd Cir.1989).

latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* Although courts might reach differing or opposite conclusions with equal justification, that does not mean that one conclusion was "right" and the other "wrong." The court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. *Id.* at 1700. Thus, assuming a valid waiver had been elicited in this case, the military judge might reasonably have taken the next step and determined to disqualify counsel.

Because the suggested inquiry of *Breese* was not adequately addressed, we cannot say that appellant's relinquishment of conflict-free counsel was made knowingly and intelligently. *United States v. Iorizzo,* 786 F.2d at 59.[9] When counsel thus labors under an actual conflict of interest, appellant need not show prejudice in order to obtain a reversal of his conviction. In view of the potential for prejudice when a defense counsel has divided loyalties, and in the absence of the informed consent of the accused, the prejudice is automatic. *United States v. Sparks,* 29 M.J. 52 (C.M.A. 1989). Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Chief Judge BYRNE and Judge ALBERTSON concur.

---

9. We would also find that for the military judge to permit the introduction of Prosecution Exhibit 6, absent defense objection and without inquiry of defense counsel and accused, as to the tactical advantage to be gained by permitting its admittance and foregoing the right to confront and cross-examine Seaman Shelby, is plain error. *See United States ex rel. Hart v. Davenport,* 478 F.2d 203 (3rd Cir.1973).