Brian K. SHELBY, 489–72–7682, Petitioner,

v.

**UNITED STATES, Respondent.**

**NMCM No. 88 01397.**

U.S. Navy–Marine Corps Court of Military Review.

14 Sept. 1994.

15. NMCTJINST 5810.5A, Navy–Marine Corps Trial Judiciary Uniform Rules of Practice (17 Dec 1990).

Robert H. Lynn, Civilian Counsel for petitioner.

ORR, Senior Judge:

A Petition for Extraordinary Relief was filed with this Court on 22 August 1994 seeking the issuance of an order vacating the petitioner's special court-martial conviction, which occurred almost 7 years ago. Although it appears we may have the discretionary authority to hear this petition in aid of our jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), for the reasons explained below, we decline to issue such an order.

To establish a basis for jurisdiction under the All Writs Act, the petitioner has asserted a facially meritorious challenge to the integrity of the judicial process in his case by claiming that he did not have effective assistance of counsel at his court-martial as contemplated by the Sixth Amendment to the U.S. Constitution. *See generally Del Prado v. United States,* 23 C.M.A. 132, 48 C.M.R. 748, 1974 WL 13907 (1974); *United States v. Frischholz,* 16 C.M.A. 150, 36 C.M.R. 306, 1966 WL 4467 (1966). In his brief in support of this petition, the petitioner argues two bases for his claim of ineffective assistance: first, that his counsel was burdened by a conflict of interest; and, second, that his counsel failed to raise the neurological or stress related effects of the petitioner's HIV-positive medical condition either in defense or mitigation.

I.

The petitioner was tried on 15 December 1987 and convicted, contrary to his pleas, at a special court-martial where he was represented by a civilian counsel, Alan V. Edmunds. The petitioner was sentenced to confinement for 4 months, forfeiture of $350.00 pay per month for 4 months, reduction to pay grade E–1, and a bad-conduct discharge. On 17 March 1988, the convening authority approved the sentence as adjudged and, except for the discharge, ordered it executed. The record of trial was submitted on its merits to this Court for review under Article 66, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 866, and the findings and sentence were subsequently affirmed in an unpublished decision, *United States v. Shelby,* No. 88 1397 (N.M.C.M.R. 18 July 1988). The bad-conduct discharge was ordered executed on 16 November 1988.

Approximately 6 weeks prior to the petitioner's special court-martial, Mr. Edmunds appeared in behalf of Yeoman Second Class Richard P. Augusztin, USN, on 3 November 1987 at a pretrial investigation convened pursuant to Article 32, UCMJ, 10 U.S.C. § 832. Mr. Edmunds subsequently represented Augusztin at a general court-martial on 19 January 1988, about a month after the petitioner's conviction. At his trial and contrary to his pleas, Augusztin was convicted of dereliction of duty and twice soliciting sodomy, but this Court, in a published opinion, *United States v. Augusztin,* 30 M.J. 707 (N.M.C.M.R.1990), reversed his conviction because of the conflict of interest created by Mr. Edmunds' dual representation of Augusztin and the petitioner, whose sworn statement was accepted as a prosecution exhibit on the merits of the Government's case against Augusztin. That statement was relevant to all three offenses of which Augusztin was charged and ultimately convicted, and it was apparent from the record of that trial that the Government, the military judge, and Augusztin were aware of Mr. Edmunds' dual representation.

To avoid the possibility of having to cross-examine the petitioner at Augusztin's trial, Mr. Edmunds did not object to the Government's offer of petitioner's statement, and in

obvious collaboration with Mr. Edmunds, the Government did not object to the defense's offer of a second sworn statement from the petitioner in which he purported (in two sentences) to retract his earlier (four-page) statement, which had been admitted as a prosecution exhibit. *Id.* at 708–09. In our decision concerning Augusztin's conviction, we stated that Augusztin was entitled to representation by counsel "unburdened by the ethical constraints resulting from prior representation of the Government's key witness." *Id.* at 709–10 (citation omitted). Implicit in our discussion of the facts concerning Mr. Edmunds' decision not to challenge the petitioner's out of court statement is the conclusion that an *actual* conflict of interest existed in Augusztin's trial. *Id.* at 710 (citing *Duncan v. Alabama*, 881 F.2d 1013 (11th Cir.1989), and *United States v. Dolan*, 570 F.2d 1177 (3rd Cir.1978)).

■ As the U.S. Court of Military Appeals has stated, however: "[M]erely because two or more defendants are represented by the same attorney or attorneys 'is not *per se* violative of constitutional guarantees of effective assistance of counsel' and does not automatically raise an appearance of conflict of interest." *United States v. Breese*, 11 M.J. 17, 19 (C.M.A.1981) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978)). In an earlier decision, the Court of Military Appeals also stated that

> it ultimately must be the responsibility of the trial court upon the *appearance* of a conflict to bring the fact of its existence and the resulting dangers which are reasonably foreseeable to the attention of each affected defendant so that he can make an informed judgment at the time as to whether he wishes to continue with his present counsel or wishes new counsel.

*United States v. Davis*, 3 M.J. 430, 434 (C.M.A.1977) (emphasis added). Consequently, to establish a basis for relief the petitioner must at least establish the appearance of a conflict of interest in the conduct of his trial if not an actual conflict.

## II.

■ In an attempt to show that a conflict of interest appeared to exist in his own trial, the petitioner asserts that, of the four offenses of which he was charged, Augusztin was a potential witness concerning three and a potential accused in relation to a fourth. The petitioner was charged with soliciting another to commit an act of sodomy with Augusztin (Charge I), being disrespectful to a chief petty officer (Additional Charge III), and disobeying an order from the same chief petty officer (Additional Charge IV). He was acquitted of the solicitation offense but found guilty of the disrespect and disobedience offenses. Augusztin, however, was not called as a witness by either side, and no evidence attributable to him was offered.

As to the disrespect and disobedience offenses, the evidence at trial indicated that Augusztin was present when a chief petty officer attempted to speak with the petitioner when the disrespect and disobedience ensued. The petitioner has not indicated, however, what the substance of Augusztin's testimony might have been concerning these offenses. Augusztin was not charged with any offense stemming from that incident, and unless his testimony would have been detrimental to the petitioner *and* he testified or was the source of evidence offered at trial, no conflict, potential or actual, would have existed. In this respect, the petitioner has not sustained his burden of showing that his court-martial was a miscarriage of justice or that a fundamental error occurred that rendered the court-martial process in his case irregular and invalid. *See Chapel v. United States*, 21 M.J. 687 (A.C.M.R.1985).

The assertion that Augusztin was a potential accused in an offense of which the petitioner was also charged relates to the petitioner's conviction for stealing an aviator's flight log book (Additional Charge II). Augusztin, however, was never charged with any larceny offense or any offense related to a larceny. The sole basis for this assertion appears to be the testimony of the chief petty officer who was the object of the petitioner's disrespectful behavior. That witness stated that he had been asked to tell the petitioner and Augusztin that some log books were

missing and that no questions would be asked if they were returned. Record at 14. No evidence was revealed in the course of the petitioner's trial that implicated Augusztin or even indicated that he might have been a suspect in the disappearance of any log books, and the petitioner has not alleged any other information to support his assertion. In fact, in his own testimony during his trial, the petitioner stated that although the chief pulled both him and Augusztin off to the side to talk with them about the theft of the log book, the chief "was just making the accusation that *I* had stolen the log book or log books, and it would be in *my* better interests to return them." Record at 91 (emphasis added). We likewise find the petitioner has failed to sustain his evidentiary burden in regard to this aspect of his petition for extraordinary relief.

### III.

■ The petitioner also claims ineffective representation by his civilian counsel when that counsel failed to raise the issue of the neurological or stress related effects of the petitioner's HIV diagnosis either in defense or mitigation. Despite the initial breadth of this assertion, the petitioner appears to concede that his medical condition "was of unknown value in defense." Petition at 7. Even as a matter in extenuation or mitigation, under the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), an accused must show both that his counsel's performance was deficient and that the deficient performance deprived the accused of a fair trial or a trial with a reliable result. 466 U.S. at 687, 104 S.Ct. at 2064. The latter of these two components requires showing that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. 466 U.S. at 694, 104 S.Ct. at 2068. In the context of a deficiency occurring during the sentencing portion of a court-martial, the question would be whether there is a reasonable probability that the sentence would have been less. *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). "There is 'a strong presumption' of adequate representation, and ... [the petitioner] has the burden of proving that he

was not effectively represented." *United States v. Stinson,* 34 M.J. 303, 306 (C.M.A. 1992) (citing *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065).

The evidence the petitioner points to is (1) an apparent excerpt from the petitioner's medical record 8 months before trial indicating that he was concerned, upset, and angry that his "entire work center [had] found out ... he was HIV positive" and (2) a quotation from a 1991 article from a medical journal indicating that both the initial diagnosis of an HIV infection and the unwanted disclosure of that diagnosis to others induces fear, demoralization, despondency, and stress. Brief at 13–14. Although we do not discount the petitioner's referral to an article published at least 3 years *after* the petitioner's trial to support his contention of ineffective assistance, we do note that the petitioner no where alleges that at the time of trial he wished to disclose his condition in open court. We do note that in an unsworn statement, delivered by his civilian counsel to the trial court at the petitioner's request, it was mentioned that the petitioner "has serious medical problems that are afflicting him at this time [and] he has a bad heart and has other medical problems that are being dealt with." Record at 123. Consequently, it appears that a conscious decision was made not to disclose the details of the petitioner's medical condition at that time. It also appears to us that other tactical considerations may have been a factor in not disclosing the diagnosis at trial.

### IV.

In sum, we are not convinced by the evidence before us that Mr. Edmunds' representation of the petitioner was ineffective. For the reasons stated earlier, we disagree as well with his conclusion that, because there was a conflict of interest in civilian counsel's representation of Augusztin, *ipso facto,* there was a conflict of interest in civilian counsel's representation of the petitioner. Additionally, *coram nobis* "is not a substitute for an appeal. It is extraordinary relief predicated upon 'exceptional circumstances' not apparent to the court in its original consideration of the case." *Frischholz,* 16

C.M.A. at 152, 36 C.M.R. at 309, 1966 WL 4467 (citation omitted). It appears the petitioner and Augusztin were barracks roommates and good friends, and it is clear that each knew of the other's representation by the same civilian counsel. If the petitioner had reservations about the conduct of his attorney, it should have been brought up at the trial level or during the appeal of his court-martial to this Court. *See United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954) (indicating that "deliberate failure to use a known remedy at the time of trial may be a bar to subsequent reliance on the defaulted right" in a petition for a writ of error *coram nobis*); *see also Chapel*, 21 M.J. at 689.

Accordingly, the petition for extraordinary relief in the nature of error coram nobis is denied.

Senior Judge REED and Judge KEATING concur.