UNITED STATES, Appellee

v.

Bryant K. MARSH, Private
U.S. Army, Appellant

No. 11-0123

Crim. App. No. 20080382

United States Court of Appeals for the Armed Forces

Argued March 7, 2011

Decided June 2, 2011

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.  RYAN, J., filed a separate
opinion concurring in part and dissenting in part, in which
STUCKY, J., joined.

Counsel


For Appellant:  Captain A. Jason Nef (argued); Colonel Mark
Tellitocci and Lieutenant Colonel Imogene M. Jamison (on brief);
Captain Michael E. Korte.

For Appellee:  Major Sara M. Root (argued); Colonel Michael E.
Mulligan and Major Amber J. Williams (on brief); Captain Chad M.
Fisher.

Military Judge:  Patrick J. Parrish


**This opinion is subject to revision before final publication.**

United States v. Marsh, No. 11-0123/AR

Judge ERDMANN delivered the opinion of the court.

Private Bryant K. Marsh was acquitted of rape but convicted of making a false official statement at a general court-martial with members. He was sentenced to a bad-conduct discharge, forfeiture of $1,347.00 pay for one month, and a reduction to E-1.[1] The convening authority approved the sentence and the United States Army Court of Criminal Appeals summarily affirmed the findings and sentence. United States v. Marsh, No. ARMY 20080382, slip op. at 1 (A. Ct. Crim. App. Oct. 7, 2010).

"Merely urging the court members to consider an unsworn statement for what it is falls within the boundary of fair prosecutorial comment." United States v. Breese, 11 M.J. 17, 24 (C.M.A. 1981) (citations omitted). In addition, "it is error for trial counsel to make arguments that 'unduly . . . inflame the passions or prejudices of the court members.'" United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F. 2007) (quoting United States v. Clifton, 15 M.J. 26, 30 (C.M.A. 1983)). We granted review to consider whether the trial counsel's closing argument improperly invited the panel to draw an adverse inference from Marsh's decision to give an unsworn statement,

---

[1] We note that this forfeiture exceeds the maximum forfeiture allowed when the sentence does not include confinement (two-thirds of a month's pay based on the adjudged reduction to the pay grade of E-1). United States v. Warner, 25 M.J. 64, 67 (C.M.A. 1987); Rule for Courts-Martial (R.C.M.) 1003(b)(2).

2

and also to determine whether the trial counsel's argument

unduly inflamed the court members by implying that Marsh would

endanger pilots' lives if he were allowed to remain in the Army.[2]

While we conclude that the trial counsel's reference to Marsh's

unsworn statement did not constitute error, portions of the

trial counsel's closing argument were unduly inflammatory.  We

therefore reverse the decision of the Army Court of Criminal

Appeals as to the sentence, set aside the sentence, and remand

the case for a sentencing rehearing.

## BACKGROUND

Private Bryant Marsh repaired helicopters for the 82nd

Combat Aviation Brigade of the 82nd Airborne Division at Fort

Bragg, North Carolina.  One evening Marsh went to Private CG's

barracks room and asked her to go to a club with him and some

fellow soldiers.  En route to the club the group stopped and

purchased alcohol and soda.  CG poured out all but three inches

---

[2] We granted review of the following issues:

    I.    Whether it was plain error for trial counsel to argue that the panel should draw adverse inferences from Appellant's failure to testify under oath during presentencing because Appellant would not answer her questions or theirs.

    II.    Whether trial counsel sought to inflame the passions of the 82nd Airborne panel by implying that Appellant's false official statement during a rape investigation puts pilots' lives in danger.

United States v. Marsh, 69 M.J. 455 (C.A.A.F. 2010) (order granting review).

3

of Coke from a twenty-ounce bottle and filled the rest with Hennessy Cognac. CG drank the contents of the bottle before they entered the club. CG remembered having several more drinks in the club, but remembers nothing more of the evening.

After CG became intoxicated at the club, two of the soldiers in the group tried to take her back to her barracks room but were unable to enter the post as she did not have her identification card. They then took CG to the hotel room of one of the soldiers where she passed out on the bed. Later that night Marsh arrived at the hotel room and took CG back to her barracks room, where they engaged in sexual intercourse. CG testified that she remembered nothing between being in the club and waking up the next morning to find her supervisor and medics in her barracks room. CG later went to the hospital where she completed a restricted rape report.[3] She testified that she did not want to file an unrestricted report "[b]ecause I wasn't sure what happened to me and I didn't want to just blame somebody for something."

Almost two months later, CG listened to a cell phone recording of Marsh talking to another soldier. In the call

---

[3] A restricted report allows a sexual assault victim to confidentially report the details of the assault, and receive treatment and counseling, without initiating an official investigation. Dep't of the Army, Reg. 600-20, Personnel-- General, Army Command Policy para. 8-4(c) (Mar. 18, 2008). In contrast, an unrestricted report initiates an official investigation. Id. at 8-4(d).

Marsh referenced a list of men that CG had slept with and included his name on that list. CG testified that she was shocked when she heard that as she was unaware she had slept with him. She then contacted the Fort Bragg Criminal Investigation Division (CID) and filed an unrestricted rape report.

Special Agent (SA) Ellis interviewed Marsh the same day that CG filed her unrestricted report. Marsh waived his rights and agreed to speak with SA Ellis. Marsh initially told SA Ellis that he and CG had consensual sexual intercourse in her room before they left her barracks room for the club. Later in the interview Marsh admitted that the intercourse occurred after they returned to her barracks room from the hotel, but again maintained that it was consensual. Marsh apologized to the agent for the deception and said that he thought CID wouldn't want to hear that he had sexual intercourse with someone who had been drinking.

DISCUSSION

I.  Trial counsel's reference to Marsh's unsworn statement

Marsh gave an unsworn statement during the presentencing proceeding. Subsequently, the president of the panel asked the military judge what the difference was between a sworn and unsworn statement. The military judge said that he would give the panel an instruction on how to treat an unsworn statement,

but did give the following brief description at that time: "It basically means an unsworn statement, which a Soldier has the right to do, he [sic] may not be cross-examined upon an unsworn statement." The president asked if the court members could ask questions of Marsh and the military judge responded that they could not and reiterated that after hearing arguments on sentencing, the court members would receive further instructions.

During sentencing argument, trial counsel commented on Marsh's unsworn statement:

> Now the judge will instruct you on the difference between a sworn and an unsworn statement. The [G]overnment would ask you to give less weight to this unsworn statement -- the accused's unsworn statement. The accused was not subject to cross-examination, he did not answer questions from the [G]overnment nor from you.

Defense counsel did not object. During sentencing instructions, the military judge instructed the court members on how they were to consider Marsh's unsworn statement:

> The court will not draw any adverse inference from the fact the accused has elected to make a statement which is not under oath. An unsworn statement is an authorized means for an accused to bring information to the attention of the court and it must be given appropriate consideration. The accused cannot be cross-examined by the prosecution or interrogated by the court members or myself upon an unsworn statement, but the prosecution may offer evidence to rebut any statement of fact contained in such an unsworn statement. The weight and significance to be attached to an unsworn statement rests within the sound discretion of each court member. You may consider the statement is not under

> oath, its inherent probability, or improbability, whether it's supported or contradicted by other evidence in the case, as well as any other matter that may have a bearing on its credibility.  In weighing an unsworn statement, you are expected to use your common sense and your knowledge of human nature and the ways of the world.

Marsh argues that it was plain error for the trial counsel to invite the court members to draw a negative inference from Marsh's decision to make an unsworn statement.  He argues that the trial counsel knew that the president of the panel was interested in asking questions and used this to improperly invite the panel to penalize Marsh for exercising his right.

The Government responds that the trial counsel's comment remained within the bounds of permissible argument.  The Government goes on to argue that, in any event, Marsh suffered no prejudice because the trial counsel's comments were consistent with the military judge's instructions and the evidence supporting the sentence was strong.

Improper argument is a question of law that we review de novo.  United States v. Pope, 69 M.J. 328, 334 (C.A.A.F. 2011).  Since the defense counsel did not object to trial counsel's sentencing argument, we review Marsh's claim for plain error.  United States v. Erickson, 65 M.J. 221, 223 (C.A.A.F. 2007).  To prevail, Marsh must prove that:  "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a

substantial right." Id. (citation and quotation remarks omitted).

In Breese, after the accused made an unsworn statement, trial counsel argued: "'[a]nd when you consider the accused's statement, I ask you to consider something different about the accused's statement. Everybody else who sat in that box today took an oath to tell the truth.'" 11 M.J. at 23 (alteration in original). The defense counsel objected to this statement but the objection was overruled. Id. The military judge in Breese provided the members with essentially the same instruction that the military judge provided in this case. See id. Before this court, Breese argued that the trial counsel's argument implied that he was lying since his statement was not under oath. Id. Noting that the military judge's instructions provided the members with correct guidance, we held:

> The truth of the matter is that these statements are not made under oath and, thus, the "unsworn statement is not evidence." Merely urging the court members to consider an unsworn statement for what it is falls within the boundary of fair prosecutorial comment. Here the challenged statement seems only to have been directed towards that end and did not constitute an invitation for the court members to draw an adverse inference against the appellant.

Id. at 24 (citations omitted).

The military judge in this case correctly instructed the panel that Marsh could not be cross-examined by the Government or interrogated by the court members. He further instructed

8

them that they could consider that Marsh did not make his statement under oath and could also consider any other matter that may have a bearing on the statement's credibility. The trial counsel's statement did nothing more than ask the court members to consider Marsh's unsworn statement in light of the fact that he was not subject to cross-examination and therefore urged them to give it less weight. In fact, Marsh's statement was not subject to cross-examination and the members could legitimately consider that fact in assessing its credibility. This aspect of trial counsel's argument fell within the boundary of fair prosecutorial comment. See id. As there was no error, the remaining prongs of the plain error inquiry need not be considered.

II. Trial counsel's argument that Marsh could not be trusted with the lives of pilots

During the sentencing phase of the court-martial, Marsh's squad leader, Sergeant Pat C. Nieto, testified on his behalf. Sergeant Nieto testified that he rated Marsh in the top ten percent of the soldiers he supervised. He further testified that Marsh was "invaluable to me in training new soldiers coming in." The fact that Marsh had been convicted of a false official statement would not cause Sergeant Nieto any concern in serving and deploying with him. On cross-examination, Sergeant Nieto

was asked if Marsh was currently working in his MOS[4] as a

helicopter repairman.  Sergeant Nieto responded that he was not.

On redirect, Sergeant Nieto clarified that Marsh was not

actually "turning wrenches" but was supervising new soldiers.

The military judge then asked why Marsh was not working in his

MOS and Sergeant Nieto explained:

> Gentlemen, the reason Private Marsh is not
> serving in his MOS in Aviation is any time a
> Soldier is in trouble for anything, we usually
> restrict him from working on the aircraft as to
> not cause a problem with the aircraft.  As we
> hold the pilots' lives in our hands everyday, we
> don't want his ideas and stuff going on in his
> head or his concerns to translate over to the
> job either inadvertently or purposely.  So in
> this case, the commander the [sic] first
> sergeant restricted him from working on the
> aircraft until -- pending the results of his
> trial.  And that is the reason he is not working
> on the aircraft at this moment.

Sergeant Nieto further clarified the situation during

recross-examination:

> Q:  You said that you don't -- he can't touch
> aircraft because you don't want ideas in his
> head inadvertently or purposely transferring to
> other Soldiers or to --
>
> A:  No, sir, if I may clarify.  When working on
> the aircraft, you hold peoples' lives in your
> hand [sic] on a daily basis.  We don't want
> Private Marsh thinking about his case or
> something going on with his case that would
> interfere with his thought process while working
> on an aircraft so that he wouldn't accidently do

---

[4] Military occupational specialty.  Dep't of the Army, Reg. 611-1, Personnel Selection and Classification, Military Occupational Classification Structure Development and Implementation para. 6-4 (Sept. 30, 1997).

> something to the aircraft or forget to put a
> bolt on the right way or something to that
> nature that would cause a problem with the
> aircraft.

In his sentencing argument, the trial counsel argued that the court members could not trust Marsh with the lives of pilots because he lied to SA Ellis:

> Because a good Soldier doesn't lie.  The
> [G]overnment would argue that this Soldier
> should absolutely not remain in our Army that
> values integrity and honor, not lies and not
> deceit.  You can't trust the accused.  The
> accused is an aircraft mechanic, someone you
> trust to work on your airplanes, to tighten that
> bolt, to make sure that those aircrafts are
> worthy to fly, to do rescue missions, to serve
> this Army.  Can you trust someone who lies with
> the lives of those pilots?

Emphasis added.

Marsh argues that the trial counsel unduly inflamed the passions of the court members on two grounds:  his conviction for false official statement bears no relevance to his duty or ability to repair aircraft; and, the trial counsel invited the court members to put themselves in an aircraft repaired by Marsh and then instilled fear that the aircraft would crash.

The Government responds that the trial counsel simply rebutted Marsh's sentencing witnesses' testimony that he could be trusted and commented on his character for future service. The Government argues that Marsh's truthfulness is highly relevant to whether rehabilitation could be successful or whether Marsh can complete his duty with good order and

11

discipline.  Rather than inflame court members, the Government asserts that the trial counsel was simply referring to Sergeant Nieto's statement "that aircraft mechanics are entrusted with pilots' lives."

As in the first issue, improper argument is a question of law that we review de novo.  Pope, 69 M.J. at 334.  Since the defense counsel did not object to the trial counsel's comments, we again review for plain error.  Erickson, 65 M.J. at 223.  Marsh must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right.  Id.

"[T]rial counsel is at liberty to strike hard, but not foul, blows."  Schroder, 65 M.J. at 58 (citation and quotation marks omitted).  As a result, "it is error for trial counsel to make arguments that 'unduly . . . inflame the passions or prejudices of the court members.'"  Id. (quoting Clifton, 15 M.J. at 30).  The trial counsel also must not inject matters that are not relevant into argument.  Id. (citing United States v. Fletcher, 62 M.J. 175, 180 (C.A.A.F. 2005); R.C.M. 919(b) Discussion).  Nor can the trial counsel ask court members to place themselves in the shoes of the victim or a near relative.  United States v. Baer, 53 M.J. 235, 237-38 (C.A.A.F. 2000).

While this court has not previously examined whether a prosecutor can properly ask court members to place themselves in

the shoes of potential future victims, the United States Court of Appeals for the Sixth Circuit has addressed this issue. In Hodge v. Hurley, 426 F.3d 368, 384 (6th Cir. 2005), that court held that a suggestion that the jury put itself in the place of someone who may run into the defendant on the street is impermissible argument. This is because trial counsel must not "fan the flames of the jurors' fears by predicting that if they do not convict . . . some . . . calamity will consume their community." Bedford v. Collins, 567 F.3d 225, 234 (6th Cir. 2009) (citation omitted).

Trial counsel personalized his argument to the panel members by referring to Marsh as working on "your" aircraft and questioning whether Marsh could be trusted with the lives of the unit's pilots. We believe that this portion of trial counsel's argument constituted error and that it was plain and obvious. We can find no rational nexus between the fact that Marsh lied to SA Ellis during the investigation and the assertion that he could not be trusted with the lives of pilots in the future. The Government's argument that the comment was merely reflecting the testimony of Marsh's squad leader is not supported by the record. It is clear from Sergeant Nieto's testimony that Marsh was placed in a supervisory role only for the duration of his court-martial because he might be "thinking about his case or

something going on with his case that would interfere with his thought process."

It cannot be reasonably inferred from this record that those concerns would extend beyond the conclusion of the trial. In fact, just the opposite is true. Sergeant Nieto and Marsh's First Sergeant testified that they would serve and deploy with Marsh again. Consequently, the trial counsel's assertion that the court members could no longer trust Marsh to perform his assigned duties is not supported by the testimony of Marsh's immediate supervisors -- the only testimony on this subject in the record. Trial counsel's invitation to the court members to imagine themselves as potential future victims only served to inflame a fear as to what might happen if the panel did not adjudge a discharge. See Hodge, 426 F.3d at 384; Bedford, 567 F.3d at 234.

Our final analysis concerns whether this error prejudiced Marsh. Here we balance the severity of the improper argument, any measures by the military judge to cure the improper argument, and the evidence supporting the sentence to determine whether the "'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the appellant] was sentenced 'on the basis of the evidence alone.'" Erickson, 65 M.J. at 224 (quoting Fletcher, 62 M.J. at 184).

As we discussed earlier, trial counsel's argument that Marsh could not be trusted to work on helicopters in the future because of his conviction for making a false official statement lacks both a rational nexus and factual support in the record. The more serious aspect of trial counsel's argument was his invitation to the members that they place themselves in the shoes of future victims of Marsh's alleged inability to perform his duties and to imply that the lives of the unit's pilots would be at risk. There is nothing in the record that supports this assertion and it clearly was unduly inflammatory. Although the military judge gave the standard instruction before findings arguments that counsels' arguments are not to be viewed as evidence, he provided no specific curative instruction in response to trial counsel's sentencing argument.[5]

In looking at the weight of evidence supporting the sentence, we note that the Government did not present a significant case in aggravation. In fact, the Government only introduced Marsh's Enlisted Record Brief (ERB), which contained no derogatory information, and rested their sentencing case without calling any witnesses. Marsh, on the other hand, called three character witnesses and made an unsworn statement. His first character witness was First Sergeant Roque Quichocho, who

---

[5] Generally, potential harm from improper comments can be cured through a proper curative instruction. See United States v. Ashby, 68 M.J. 108, 123 (C.A.A.F. 2009).

testified that Marsh had worked for him as a crew chief both at Fort Bragg and in Iraq. The First Sergeant testified that Marsh was intelligent, had a great work ethic, and that he could rely on him to complete sergeant level tasks without supervision. He testified that Marsh was "an all-around pretty good [s]oldier" and he would have no qualms in serving or deploying with him again. The next character witness was Marsh's squad leader Sergeant Nieto, who testified that Marsh ranked in the top ten percent of his troops and that he would serve and deploy with him again. His final character witness was Marsh's father who testified as to Marsh's upbringing, his work ethic, and the family's pride in Marsh's service.

The Government argues that there was no prejudice as the maximum sentence for this offense is a dishonorable discharge and five years of confinement and Marsh was only sentenced to a bad-conduct discharge, forfeiture of $1,347.00 pay for one month, and reduction to E-1. However, given the maximum authorized sentence and the sentence adjudged, it is apparent that the panel was somewhat receptive to the defense sentencing argument. As a result, it is not clear that Marsh's sentence was unaffected by the trial counsel's improper argument. Taking into consideration the record as a whole, including the relative weight of the parties' respective sentencing cases and trial

16

United States v. Marsh, No. 11-0123/AR

counsel's improper argument, we cannot be confident that Marsh
was sentenced on the basis of the evidence alone.

DECISION

The decision of the United States Army Court of Criminal
Appeals is affirmed as to findings, but is reversed as to the
sentence.  The sentence is set aside and the record is returned
to the Judge Advocate General of the Army.  A sentencing
rehearing is authorized.

United States v. Marsh, No. 11-0123/AR

RYAN, Judge, with whom STUCKY, Judge, joins (concurring in part and dissenting in part):

I agree with the Court that trial counsel's comment on Appellant's unsworn statement was proper.  I respectfully dissent from the judgment because, even assuming error, trial counsel's statement that Appellant could not be trusted with the lives of pilots was not shown by Appellant to be "plain," "clear," or "obvious" error.  United States v. Olano, 507 U.S. 725, 734 (1993) (citations and quotation marks omitted).[1]  Moreover, even if the error was plain, Appellant has not shown prejudice.

"Error is 'plain' when it is 'obvious' or 'clear under current law.'"  United States v. Harcrow, 66 M.J. 154, 162 (C.A.A.F. 2008) (Stucky, J., with whom Effron, C.J.,

---

[1] Rule for Courts-Martial (R.C.M.) 1001(g) provides that "[f]ailure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection."  (Emphasis added.)  The text of this rule forecloses appellate review altogether when the accused fails to object -- a conclusion bolstered by comparison to other provisions that, unlike R.C.M. 1001(g), treat failure to object as waiver "in the absence of plain error."  See, e.g., R.C.M. 920(f); 1005(f); 1106(f)(6).  Nonetheless, our precedents hold that in the absence of objection we review a claim of improper prosecutorial presentencing argument for plain error.  See, e.g., United States v. Erickson, 65 M.J. 221, 223 (C.A.A.F. 2007); United States v. Paxton, 64 M.J. 484, 487–88 (C.A.A.F. 2007).  And while treating failure to object to improper presentencing argument as waiver rather than forfeiture appears compelled by R.C.M. 1001(g), no one has requested that we revisit case law to the contrary.

joined, concurring in the result) (quoting Olano, 507 U.S. at 734).  Assuming arguendo that trial counsel's statement that Appellant could not be trusted with the lives of pilots was improper, it was not so "obvious" an error as to constitute plain error.

First, it is not at all clear that trial counsel sought to place members "in the shoes of potential future victims."  United States v. Marsh, __ M.J. __, __ (12-13) (C.A.A.F. 2011).  While the argument can be made that trial counsel "personalized his argument to the panel members by referring to Marsh as working on 'your' aircraft and questioning whether Marsh could be trusted with the lives of the unit's pilots," id., it is neither plain nor obvious that trial counsel's use of the word "your" was meant to refer specifically to the members (rather than the Army as a whole), especially since trial counsel immediately reverted to talking about the endangered future pilots in the third person:  "Can you trust someone who lies with the lives of those pilots?"  (Emphasis added.)

Second, even if that was the trial counsel's objective, the Court concedes that it "has not previously examined whether a prosecutor can properly ask court members to place themselves in the shoes of potential future victims."  Marsh, __ M.J. at __ (12-13).  While one

might expect the majority in this case to answer that question "no" (since that is the premise for error), plain error review requires this Court to look to "'current law.'" See Harcrow, 66 M.J. at 162 (Stucky, J., with whom Effron, C.J., joined, concurring in the result) (emphasis added) (quoting Olano, 507 U.S. at 734). Acknowledging that we have not addressed the issue compels the conclusion that any error was not plain under the precedent of this Court. See United States v. Weintraub, 273 F.3d 139, 152 (2d Cir. 2001) (finding no plain error where "[n]o binding precedent . . . at the time of trial or appeal" established error). And under the precedent from the relevant CCA, the argument at issue appears to have been permissible. United States v. Williams, 23 M.J. 776, 779 (A.C.M.R. 1987) (drawing a distinction between asking members to place themselves in the shoes of actual victims and in the place of potential future victims).

And while plain error may not "automatically" be ineffective assistance of counsel, see United States v. Bono, 26 M.J. 240, 243 n.2 (C.M.A. 1988), Appellant conceded at oral argument that his failure to raise an ineffective assistance of counsel claim "is certainly something for this Court to consider in deciding whether the error was plain and obvious." Considering that the

prosecutorial comments at issue are a far cry from the sort of comments we have previously found to be plainly inflammatory and improper, it is understandable why defense counsel failed to object. See, e.g., Erickson, 65 M.J. at 223-24 (testing trial counsel's comparison of the appellant to Adolf Hitler, Saddam Hussein, and Osama bin Laden for prejudice); United States v. Clifton, 15 M.J. 26, 30 (C.M.A. 1983) (holding that trial counsel's "conjugation of adultery with heroin" was inflammatory); United States v. Lewis, 7 M.J. 958, 959-60 (A.F.C.M.R. 1979) (holding that it was error to insinuate that the accused would use drugs on the job when the accused had only been convicted of selling drugs). In other words, while we do not disagree that the law prohibits arguments that "'unduly . . . inflame the passions or prejudices of the court members,'" Marsh, __ M.J. at __ (12) (quoting United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F. 2007)), it was not plain or obvious that the prosecutorial comments at issue did any such thing.

With regard to prejudice, the essential question is whether "'trial counsel's comments, taken as a whole, were so damaging that [this Court] cannot be confident that the members convicted [and sentenced] the appellant on the basis of the evidence alone.'" Schroder, 65 M.J. at 58

4

(quoting United States v. Fletcher, 62 M.J. 175, 184

(C.A.A.F. 2005)).  In this case, trial counsel's comments

were made in furtherance of the Government's theme that a

liar has no place in the military, which values integrity,

honor, and trust.  The theme was a valid one, and trial

counsel's alleged misconduct was minor.  Indeed, it was so

minor that the members only sentenced Appellant to a bad-

conduct discharge, partial forfeitures, and reduction to

the lowest enlisted grade.  Considering that they could

have sentenced him to a dishonorable discharge, five years

of confinement, reduction to the lowest enlisted grade, and

forfeitures of all pay and allowances, Article 58a(a),

Uniform Code of Military Justice (UCMJ), 10 U.S.C. §

858a(a) (2006); Manual for Courts-Martial, United States

pt. IV, para. 31.e. (2008 ed.), it is difficult for me to

conclude that the members were in fact inflamed or that

Appellant suffered prejudice.  See United States v. Young,

470 U.S. 1, 15 (1985) (noting that plain error doctrine is

meant to correct "only 'particularly egregious errors'"

(quoting United States v. Frady, 456 U.S. 152, 163

(1982))).

I would affirm the decision of the United States Army

Court of Criminal Appeals.